# EXHIBIT 8



## CAUSE of ACTION
**Advocates for Government Accountability**

A 501(c)(3) NONPROFIT CORPORATION

TELEPHONE: (202) 507.5880
WEB SITE: CAUSEOFACTION.ORG
2100 M STREET
SUITE 170-247
WASHINGTON, D.C. 20037

December 12, 2011

**VIA E-MAIL**

Nathaniel Gray
FOIA Office
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Facsimile: 202-326-2477
E-mail: FOIA@FTC.gov

**Re: Freedom of Information Act Request Fee Waiver (FOIA-2012-00227)**

Dear Mr. Gray:

We write in response to Sarah Mathias' December 2, 2011 letter regarding our Freedom of Information Act ("FOIA")[1] request to the Federal Trade Commission ("FTC"). In the December 2, 2011 letter, Ms. Mathias stated that our request was on hold because we "did not state [our] willingness to pay fees associated with the processing of this request."[2]

Cause of Action is an independent 501(c)(3) public interest organization that uses public advocacy and legal reform strategies to ensure greater transparency in government, protect taxpayer interests, and promote economic freedom.

Our new FOIA request sought documents on FOIA fee waiver requests granted by the FTC and the process used by the FTC to determine such fee waiver grants. We are concerned about agency decision-making regarding the granting of fee waivers pursuant to FOIA. The statute provides, in pertinent part:

---

[1] 5 U.S.C. § 552.
[2] Letter from Sarah M. Mathias, Associate General Counsel, Federal Trade Commission, to Daniel Epstein, Executive Director, Cause of Action (Dec. 2, 2011) (on file with Cause of Action).

Mr. Nathaniel Gray
December 12, 2011
Page 2

> Documents shall be furnished **without any charge** or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to **contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest** of the requester.[3]

The FTC Rules of Practice allow for the waiver of fees if the information sought is within the public interest.[4] According to FOIA.gov, in 2009 and 2010, the FTC granted only 12 fee waiver requests, while denying 101 requests.[5]

These facts raise questions about FTC's FOIA fee waiver grant process. It is in the public interest to know what requests receive the public interest fee waiver, what words the successful fee waiver applications used, who received the fee waivers, and by what process FTC determined the FOIA requests were to receive the fee waivers.

FTC's documents in response to this request will increase the public understanding of activities and operations of the government.[6] Anyone who has sought, will seek, benefited from, or will benefit from information disclosed via FOIA will benefit from the disclosure of the requested documents.[7] Therefore, the requested documents are in the public interest.

**Cause of Action Is Entitled to a Complete Waiver of Fees Due to its Non-Profit, Public-Interest Purpose.**

Cause of Action requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii). Cause of Action is a non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code. Our organization is committed to protecting the public's right to be aware of the activities of government agencies and to ensuring the lawful and appropriate use of government funds by those agencies. Cause of Action uses a combination of research, litigation, and advocacy to advance its mission. Our dynamic and diverse staff has a combined 15 years of expertise in government oversight, investigative reporting, and federal public interest litigation experience. These professionals will analyze the information responsive to this request, use their editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public, either through memoranda, reports, or press releases. Furthermore, Cause of Action has contacts with news media organizations that feature our work.[8] In addition, Cause of Action will disseminate any

---

[3] 5 U.S.C. § 552(a)(4)(A)(iii) (emphasis added).
[4] *See* 16 C.F.R. § 4.8(e)(1).
[5] FOIA.gov, Data: Create Advanced Report: FTC: Fee Waiver: All Available Years, *available at* http://www.foia.gov//data.html#tableContainer (last accessed Dec. 9, 2011).
[6] *See* 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government"); *see also* 16 C.F.R. § 4.8(e)(2)(i)(A) and (B).
[7] *See* 16 C.F.R. § 4.8(e)(2)(i)(C) and (D).
[8] Cause of Action has a history of getting its findings from FOIA requests to the public via news media articles. *See Landmark Legal Found. v. IRS*, 1998 U.S. Dist. LEXIS 21722, 14-15 (D.D.C. 1998), *cf. Judicial Watch, Inc. v. United States DOJ*, 122 F. Supp. 2d 13, 19 (D.D.C. 2000). Examples of such articles include the following:

Mr. Nathaniel Gray
December 12, 2011
Page 3

documents it acquires from this request to the public through its website, www.causeofaction.org, which also includes links to thousands of pages of documents Cause of Action acquired through its previous FOIA requests, as well as documents related to Cause of Action's litigation and agency complaints.

The release of information garnered through this request is not in Cause of Action's financial interest pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). The subject matter of the requested records specifically concerns identifiable "operations or activities of the government." Moreover, the disclosable portions of the requested information will be meaningfully informative in relation to this request. Disclosure of the requested information is likely to contribute significantly to understanding by the public at large of the operations and activities of the government, *see, e.g., Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 n.3 (2d Cir. 1994); *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 27 n.5 (D.D.C. 2006), as opposed to the individual understanding of the requester or a narrow segment of interested persons.

---

Matthew Boyle, *Report: ACORN-affiliated group gets $300,000 more in taxpayer money*, THE DAILY CALLER, (Sept. 16, 2011), *available at* http://dailycaller.com/2011/09/16/report-acorn-affiliated-group-gets-300000-more-in-taxpayer-money/; Matthew Boyle, *Long-time ACORN affiliate secures $350,000 in new taxpayer funding*, THE DAILY CALLER, (Sept. 19, 2011), *available at* http://dailycaller.com/2011/09/19/long-time-acorn-affiliate-secures-350000-in-new-taxpayer-funding/; Paul Streckfus, *Accountability Group Seeks IRS Investigation of ACORN Affiliates*, EO TAX JOURNAL, Ed. 2011-173, (Oct. 24, 2011); Bobby McMahon, *EPA Stalls Utility MACT Until December, Fights Industry Bid For Year Delay*, INSIDEEPA, (Oct. 24th, 2011), *available at* http://insideepa.com/201110212379934/EPA-Daily-News/Daily-News/epa-stalls-utility-mact-until-december-fights-industry-bid-for-year-delay/menu-id-95.html; Paul Streckfus, *More Commentary on NCPL's Annual Conference*, EO TAX JOURNAL, Ed. 2011-185, (Nov. 9, 2011); Patrick Reis and Darren Goode, *Senators hedge bets ahead of CSAPR vote - Second anti-reg bill to get vote - Perry's debate gaffe - Acrimony hits new heights in Solyndra spat*, POLITICO, (Nov. 10, 2011), *available at* http://www.politico.com/morningenergy/1111/morningenergy374.html; Paul Streckfus, *More Commentary on NCPL's Annual Conference*, EO TAX JOURNAL, Ed. 2011-187, (Nov. 15, 2011); Frank Maisano, *Nov 14 Energy Update: Chu'd Out in Congress*, ENERGYNOW!, (Nov. 15, 2011), *available at* http://www.energynow.com/energypanel/2011/11/15/nov-14-energy-update-chud-out-congress; Conn Carroll, *Labor board broke federal law on Boeing suit*, WASHINGTON EXAMINER, (Nov. 27, 2011), *available at* http://campaign2012.washingtonexaminer.com/article/labor-board-broke-federal-law-boeing-suit; Matthew Vadum, *Obama uses taxpayer cash to back ACORN Name changes used to dodge the law*, WASHINGTON TIMES, (Nov. 28, 2011), *available at* http://www.washingtontimes.com/news/2011/nov/28/obama-uses-taxpayer-cash-to-back-acorn-name-change/; Matthew Boyle, *Obama administration, GAO appear to have ignored group's ACORN affiliation to award $700K*, THE DAILY CALLER, (Nov. 28, 2011), *available at* http://dailycaller.com/2011/11/28/obama-administration-gao-appear-to-have-ignored-groups-acorn-affiliation-to-award-700k/; WORLDNETDAILY, *See which radicals got more taxpayer dollars: Support maintained despite organization's accounting 'problems,'* (Nov. 29, 2011), *available at* http://www.wnd.com/index.php?fa=PAGE.view&pageId=372685; Perry Chiaramonte, *ACORN Misused Federal Grant Funds, Report Says*, FOX NEWS, (Nov. 30, 2011), *available at* http://www.foxnews.com/politics/2011/11/30/acorn-misused-federal-grant-funds-report-says/; Marsha Shuler, *Group challenges La. contribution limit*, THE ADVOCATE, (Nov. 30, 2011), *available at* http://theadvocate.com/news/1437637-123/group-challenges-la.-contribution-limit; Margaret Menge, *Justice Audit Alleges ACORN Spin-Off in New York Misused Money*, NEWSMAX, (Dec. 1, 2011), *available at* http://www.newsmax.com/US/ACORN-justice-audit-funds/2011/12/01/id/419672; PITTSBURGH TRIBUNE-REVIEW, *Acorn lives: Meet AHCOA*, (Dec. 5, 2011), *available at* http://www.pittsburghlive.com/x/pittsburghtrib/opinion/s_770135.html; Tom Fitton, *Obama Administration Violating ACORN Funding Ban According to New Audit*, BIG GOVERNMENT, (Dec. 5, 2011), *available at* http://biggovernment.com/tfitton/2011/12/05/obama-administration-violating-acorn-funding-ban-according-to-new-audit/.

Mr. Nathaniel Gray
December 12, 2011
Page 4

### Cause of Action Is Entitled to a Complete Waiver of Fees Because it is a Representative of the News Media.

Cause of Action also asks that it not be charged search or review fees for this request because it qualifies as a "representative of the news media" under FOIA and IRS FOIA regulation 26 C.F.R. § 601.702(f)(3). In *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989), the Court of Appeals for the District of Columbia Circuit noted that FOIA's legislative history demonstrates that "it is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected. . . . In fact, any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (emphasis added), cited in *id.*

Cause of Action routinely and systematically disseminates information to the public in several ways. Cause of Action maintains a frequently visited website, www.causeofaction.org. Additionally, since September 2011, Cause of Action has published an e-mail newsletter. This newsletter provides subscribers with regular updates regarding Cause of Action's activities and information the organization has received from government entities. Cause of Action also disseminates information via Twitter and Facebook. Based on these extensive publication activities, Cause of Action qualifies for a fee waiver as a "representative of the news media" under FOIA and agency regulations.

### Production of Documents and Contact Information

We call your attention to President Obama's January 21, 2009 Memorandum concerning the Freedom of Information Act, in which he states:

> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA. . . . The presumption of disclosure should be applied to all decisions involving FOIA.[9]

If it is your position that any portion of the requested records is exempt from disclosure, Cause of Action requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1972). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient identifying information "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the *Vaughn* index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification,

---

[9] PRESIDENT BARACK OBAMA, *Memorandum for the Heads of Executive Departments and Agencies, Subject: Freedom of Information Act*, Jan. 21, 2009, *available at* http://www.whitehouse.gov/the-press-office/freedom-information-act.

Mr. Nathaniel Gray
December 12, 2011
Page 5

specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Id.* at 224 (citing *Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

In the event some portions of the requested records are properly exempt from disclosure, please redact such portions and produce all remaining reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *Mead Data Central*, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically it is not reasonable to segregate portions of the record for release.

In an effort to facilitate record production within the statutory time limit, Cause of Action prefers to accept documents in electronic format (e.g. e-mail, .pdfs). When necessary, Cause of Action will accept the "rolling production" of documents, but requests that you provide prompt notification of any intent to produce documents on a rolling basis. Please Bates-stamp all documents and produce them sequentially.[10]

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately via Amber Taylor (Amber.Taylor@causeofaction.org) or Tyler Martinez (Tyler.Martinez@causeofaction.org) or at (202) 507.5880. We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days. Thank you for your cooperation.

Sincerely,

Amber D. Taylor
Senior Attorney

Encl.   Responding to Document Requests, Definitions

---

[10] *See* "Responding to Document Requests," at #13, *infra*.

## Responding to Document Requests

1. In complying with this request, you should produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You should also produce documents that you have a legal right to obtain, that you have a right to copy or to which you have: access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Requested records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to the Cause of Action.

2. In the event that any entity, organization or individual denoted in this request has been, or is also known by any other name than that herein denoted, the request shall be read also to include that alternative identification.

3. The Cause of Action's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. When you produce documents, you should identify the specific document request or portion thereof in Cause of Action's request to which the documents respond.

5. It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same documents.

6. If any of the requested information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), you should consult with the Cause of Action staff to determine the appropriate format in which to produce the information.

7. If compliance with the request cannot be made in full, compliance shall be made to the extent possible and shall include an explanation of why full compliance is not possible.

8. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

9. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

10. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

11. The time period covered by this request is included in the attached request. To the extent a time period is not specified, produce relevant documents from January 1, 2009 to the present.

12. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery.

13. All documents shall be Bates-stamped sequentially and produced sequentially.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmation, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email, regular mail, telexes, releases, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

4. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

6. The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with or is pertinent to that subject in any manner whatsoever.