# EXHIBIT 12



**CAUSE of ACTION**
Advocates for Government Accountability
A 501(c)(3) Nonprofit Corporation

January 27, 2012

**SENT VIA E-MAIL AND U.S. MAIL**

Ms. Sarah M. Mathias
Associate General Counsel, Federal Trade Commission
Freedom of Information Act Appeal
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Facsimile: 202-326-2477
E-mail: smathias@ftc.gov

**RE: FREEDOM OF INFORMATION ACT APPEAL (FOIA-2011-01431 and FOIA-2012-00227**

Dear Ms. Mathias:

This is in response to your letter dated January 6, 2012, in which you denied our request for a fee waiver and granted partial access to the accessible records relating to prior grants of fee waivers under the public interest exception.[1] Your letter followed from a December 12, 2011 letter from Cause of Action requesting a fee waiver based on an October 28, 2011 Freedom of Information Act ("FOIA") request.

That FOIA request derived from an October 28, 2011 letter, which also served as an appeal of a fee waiver denial made by Willard K. Tom on September 22, 2011, relating to our original FOIA request of August 30, 2011.[2] Mr. Tom denied our appeal on November 29, 2011, and we replied asking for reconsideration on December 12, 2011. Mr. Tom chose to reply to that letter once again denying our request for a fee waiver on December 20, 2011.

After reviewing your January 6, 2012 letter and the records that accompanied it, Cause of Action has determined that the Federal Trade Commission ("FTC") has granted fee waivers to a variety of similar organizations under the public interest exception. Moreover, many of the requests were made in a conclusory fashion, ranging from simply asserting that disclosure would contribute significantly to public understanding of the operations or activities of the government – a mere restatement of the FOIA law – to an assertion that "citizen review of the federal governments [sic] compliance with law is in the public interest and of interest to the general public."[3]

---

[1] FOIA-2012-00227
[2] FOIA-2011-01431
[3] *See* FOIA Request of AFGE, AFL-CIO, Mar. 17, 2009 (FOIA-2009-00778).

2100 M Street, NW
Suite 170-247
Washington, DC 20037-1233

www.CauseOfAction.org                    Ph: 202.507.5880

Ms. Sarah Mathias
January 27, 2012
Page 2

     While Cause of Action does not intend to second-guess your decision to grant fee waivers to other organizations, the disclosure of those organizations that have received fee waivers is concerning given the types of organizations that were granted waivers and the manner by which they were granted waivers.  The FTC's decision not to grant Cause of Action a fee waiver on its FOIA requests of August 30, 2011 and October 28, 2011 is unjustified in light of information already provided by Cause of Action to the FTC.

     Cause of Action reserves the right to seek judicial review of the denial of the appeal of the fee waiver decision by General Counsel Willard K. Tom on November 29, 2011.  However, in order to avoid litigation over a fee waiver denial, <u>Cause of Action would like to provide additional information</u> as part of an appeal of your fee waiver denial of January 6, 2012 on FOIA-2012-00227, and hope that this information will prove helpful in reconsidering the original denial of a fee waiver on FOIA-2011-01431. After speaking with Corinna Zarek (Corinna.Zarek@nara.gov) at the Office of Government Information Services ("OGIS"), we believe this is the best course of action to take in order to clear up any confusion as to Cause of Action's purpose and intent to disseminate the requested information.[4]

     In General Counsel Willard K. Tom's letter denying our appeal on November 29, 2011, he cited judicial precedent that the requester of records has the burden to prove that disclosure would contribute significantly to the public understanding of government operations or activities. In *Larson v. CIA*, the D.C. Circuit held that the petitioner had failed to show that he would disseminate the requested information in a way that would contribute significantly to the public's understanding of the operations or activities of the government.  843 F.2d 1481 (D.C. Cir. 1988). The petitioner had failed to name the newspaper (in the administrative record) to which he would disseminate the disclosures, he had failed to state his purposes for seeking the material, and he had not named any professional or personal contacts with the media.  *Id*. at 1483.  The court has said that proving that requested information is in the public interest requires "reasonable specificity."  *Id*.

     In our October 28, 2011 letter appealing the denial of a fee waiver, Cause of Action stated that our FOIA request concerned "recent FTC investigations into businesses or individual bloggers who allegedly violated the Guides Concerning the Use of Endorsements and Testimonials in Advertising ("Guides")."[5]  We stated that disclosure of such information would "allow the public to understand how FTC actions affect fundamental rights," namely the First Amendment right to free speech.  In the original FOIA request from August 30, 2011, we also stated that the FTC's "disclosure requirements put restrictions on the commercial speech of bloggers and other marketers," therefore justifying close public scrutiny of the FTC's efforts in this area.

     Cause of Action more than meets the requirements for a waiver under the public interest exception.  Indeed, our organization's very purpose is to shed light on government operations

---

[4] Telephone Call between Michael Wilt, Staff Attorney, Cause of Action, and Corinna Zarek, Attorney Advisor, OGIS, on Jan. 19, 2012.
[5] Letter of Tyler Martinez, Associate Attorney, Cause of Action, to Willard K. Tom, General Counsel, FTC, Oct. 28, 2011.

Ms. Sarah Mathias
January 27, 2012
Page 3

and activities and to disseminate that information to the public. Cause of Action will analyze the information responsive to this request, use professional editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public, either through memoranda, reports, or press releases. Cause of Action will disseminate any documents it acquires from these requests to the public through its website, www.causeofaction.org, which also includes links to thousands of pages of documents Cause of Action acquired through its previous FOIA requests, as well as documents related to Cause of Action's litigation and agency complaints."[6] Furthermore, Cause of Action has contacts with news media organizations that regularly feature our work.[7] The agency's regulations on information state that a representative of the news media

---

[6] *Id.*

[7] Cause of Action's history of disseminating its findings from FOIA requests to the public via news media articles suffices to meet the legal standard for fee waiver. *See Landmark Legal Found. v. IRS*, 1998 U.S. Dist. LEXIS 21722, 14-15 (D.D.C. 1998), *cf. Judicial Watch, Inc. v. United States DOJ*, 122 F. Supp. 2d 13, 19 (D.D.C. 2000). Examples of such articles include the following: Matthew Boyle, *Report: ACORN-affiliated group gets $300,000 more in taxpayer money*, THE DAILY CALLER, (Sept. 16, 2011), *available at* http://dailycaller.com/2011/09/16/report-acorn-affiliated-group-gets-300000-more-in-taxpayer-money/; Matthew Boyle, *Long-time ACORN affiliate secures $350,000 in new taxpayer funding*, THE DAILY CALLER, (Sept. 19, 2011), *available at* http://dailycaller.com/2011/09/19/long-time-acorn-affiliate-secures-350000-in-new-taxpayer-funding/; Paul Streckfus, *Accountability Group Seeks IRS Investigation of ACORN Affiliates*, EO TAX JOURNAL, Ed. 2011-173, (Oct. 24, 2011); Bobby McMahon, *EPA Stalls Utility MACT Until December, Fights Industry Bid For Year Delay*, INSIDEEPA, (Oct. 24th, 2011), *available at* http://insideepa.com/201110212379934/EPA-Daily-News/Daily-News/epa-stalls-utility-mact-until-december-fights-industry-bid-for-year-delay/menu-id-95.html; Paul Streckfus, *More Commentary on NCPL's Annual Conference*, EO TAX JOURNAL, Ed. 2011-185, (Nov. 9, 2011); Patrick Reis and Darren Goode, *Senators hedge bets ahead of CSAPR vote - Second anti-reg bill to get vote - Perry's debate gaffe - Acrimony hits new heights in Solyndra spat*, POLITICO, (Nov. 10, 2011), *available at* http://www.politico.com/morningenergy/1111/morningenergy374.html; Paul Streckfus, *More Commentary on NCPL's Annual Conference*, EO TAX JOURNAL, Ed. 2011-187, (Nov. 15, 2011); Frank Maisano, *Nov 14 Energy Update: Chu'd Out in Congress*, ENERGYNOW!, (Nov. 15, 2011), *available at* http://www.energynow.com/energypanel/2011/11/15/nov-14-energy-update-chud-out-congress; Conn Carroll, *Labor board broke federal law on Boeing suit*, WASHINGTON EXAMINER, (Nov. 27, 2011), *available at* http://campaign2012.washingtonexaminer.com/article/labor-board-broke-federal-law-boeing-suit; Matthew Vadum, *Obama uses taxpayer cash to back ACORN Name changes used to dodge the law*, WASHINGTON TIMES, (Nov. 28, 2011), *available at* http://www.washingtontimes.com/news/2011/nov/28/obama-uses-taxpayer-cash-to-back-acorn-name-change/; Matthew Boyle, *Obama administration, GAO appear to have ignored group's ACORN affiliation to award $700K*, THE DAILY CALLER, (Nov. 28, 2011), *available at* http://dailycaller.com/2011/11/28/obama-administration-gao-appear-to-have-ignored-groups-acorn-affiliation-to-award-700k/; WORLDNETDAILY, *See which radicals got more taxpayer dollars: Support maintained despite organization's accounting 'problems,'* (Nov. 29, 2011), *available at* http://www.wnd.com/index.php?fa=PAGE.view&pageId=372685; Perry Chiaramonte, *ACORN Misused Federal Grant Funds, Report Says*, FOX NEWS, (Nov. 30, 2011), *available at* http://www.foxnews.com/politics/2011/11/30/acorn-misused-federal-grant-funds-report-says/; Marsha Shuler, *Group challenges La. contribution limit*, THE ADVOCATE, (Nov. 30, 2011), *available at* http://theadvocate.com/news/1437637-123/group-challenges-la.-contribution-limit; Margaret Menge, *Justice Audit Alleges ACORN Spin-Off in New York Misused Money*, NEWSMAX, (Dec. 1, 2011), *available at* http://www.newsmax.com/US/ACORN-justice-audit-funds/2011/12/01/id/419672; PITTSBURGH TRIBUNE-REVIEW, *Acorn lives: Meet AHCOA*, (Dec. 5, 2011), *available at* http://www.pittsburghlive.com/x/pittsburghtrib/opinion/s_770135.html; Tom Fitton, *Obama Administration*

Ms. Sarah Mathias
January 27, 2012
Page 4

is defined as a person "actively gathering news for an entity that is organized and operated to publish or broadcast news to the public."[8] The information provided in this letter illustrates Cause of Action's long-term track record of materially contributing to the general public's understanding of current events and issues that are of current interest by disseminating information gleaned from our FOIA requests to other representatives of the news media and via our online newsletter and other publication activities. The same methods for dissemination will, once again, be used for this requested information.

### Cause of Action is Entitled to a Complete Waiver of Fees

Cause of Action should be granted a fee waiver as to both FOIA requests because it is a 501(c)(3) nonprofit, independent public interest firm that uses public advocacy and legal reform strategies to ensure greater transparency in government, protect taxpayer interests and promote economic freedom. Cause of Action has no commercial, trade, or profit interests in the requested information. Cause of Action's primary purpose for use of information obtained through FOIA is to provide the information to the public through our website and the media.

As the FTC's own regulations state, there is a four-part test for determining a public interest waiver if there is no commercial purpose.[9] That regulation states the four part test as follows:

(A) The subject matter of the requested information concerns the operations or activities of the Federal government;
(B) The disclosure is likely to contribute to an understanding of these operations or activities;
(C) The understanding to which disclosure is likely to contribute is the understanding of the public at large, as opposed to the understanding of the individual requester or a narrow segment of interested persons;
(D) The likely contribution to public understanding will be significant.

We direct your attention to *Prison Legal News v. Lappin*, in which a federal district court found that PLN, a legal journal, was entitled to certain information that it would distribute through its newsletter to its subscribers. 436 F. Supp. 2d 17 (D.D.C. 2006). As the court found, PLN sought "information regarding specific events that occurred," not just a single isolated event that would contribute to some general notion of government accountability. *Id.* at 26. Because PLN had demonstrated that it would disseminate the information disclosed to the general public and that this information would contribute significantly to the public's understanding of prison operations, it was entitled to the fee waiver that the government had denied. Like PLN and unlike *Larson*, Cause of Action "does not have to rely on another entity to disseminate the

---

*Violating ACORN Funding Ban According to New Audit*, BIG GOVERNMENT, (Dec. 5, 2011), *available at* http://biggovernment.com/tfitton/2011/12/05/obama-administration-violating-acorn-funding-ban-according-to-new-audit/; NATIONAL RIGHT TO WORK COMMITTEE, *NLRB: Law Breakers?*, (Dec. 10, 2011), *available at* http://www.nrtwc.org/nlrb-law-breakers/.
[8] 16 C.F.R. § 4.8(b)(2)
[9] 16 C.F.R. § 4.8(e)(2)(i).

Ms. Sarah Mathias
January 27, 2012
Page 5

information" and does not have a "tenuous link" between the information requested and the channels through which the information will be disseminated. *Id.* at 27. A requester's ability to disseminate the information to a large audience is an important factor in an agency's determination whether the public understanding of government operations or activities would be significantly enhanced.

### (1) FOIA Request of August 30, 2011

The original FOIA request meets all four parts of the test. We requested records relating to changes to the "Guides Concerning the Use of Endorsements and Testimonials in Advertising" between January 1, 2009 and September 6, 2011, concerning social media authors.[10] Given that this concerns the operations or activities of the Federal Trade Commission, a federal agency, this clearly meets part (A) of the test. Should these records be disclosed, the general public – to whom Cause of Action will disseminate the information directly – will better understand how the FTC operates when formulating rules that impact a significant fundamental right: the First Amendment. After all, changes to these Guides and the pursuit of investigations regarding potential violations of the Guides by social media authors (bloggers) impacts a significant portion of society that participates in social media as either an author or a reader. Understanding how the government changes its rules and pursues investigations of violations of those rules when the rules may inhibit the exercise of the freedom of speech is of interest to the public. Therefore, parts (B) and (C) are also clearly met. Finally, given the great importance of protecting the freedom of speech of social media authors, public understanding of how the FTC regulates a fundamental freedom would significantly contribute to the public's understanding of how the government may or may not be inhibiting a fundamental right. As Cause of Action stated in its October 28, 2011 letter, "[w]ith such important rights at stake, it can hardly be denied that the public's informational benefit would be significant."

The law does not require a FOIA requester who qualifies for a fee waiver to spell out to the government in exacting detail how the disclosed information would significantly contribute to the public's understanding of the government's operations, but an agency may "request some additional information" from a requester. *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987). Without disclosed information, it is difficult to know for certain how the public's understanding would be significantly benefited. All that is required is that the requested information be "likely" to contribute to the public's understanding. Given Cause of Action's history of disseminating FOIA information to the public, the impact that the changes to the guides and resulting investigations would have on the public, and the importance of public understanding of how the government regulates free speech of social media authors, it is without question that the contribution to the public's understanding of how the FTC regulates citizen social media authors and readers would be "significant."

### (2) FOIA Request of October 28, 2011

---

[10] *See* Letter from Sarah Mathias, Associate General Counsel, FTC, to Daniel Epstein, Executive Director, Cause of Action, Sept. 22, 2011, confirming telephone conversation narrowing FOIA request.

Ms. Sarah Mathias
January 27, 2012
Page 6

Cause of Action also appeals the denial of a fee waiver relating to our FOIA request for production of documents relating to all FOIA requests in which the FTC granted a fee waiver under the public interest exception from January 1, 2009 to the present and all documents referring or relating to the process in which the FTC determined FOIA requests were within the fee waiver exception. Understanding how the FTC chooses to award fee waivers for the "public interest" exception is of fundamental importance to the general public. Cause of Action will review the disclosed documents and disseminate that information to the public in a manner that will help the public to understand how the Federal government determines who is and is not considered worthy of a fee waiver. The public must know whether government agencies are playing favorites based on factors outside of those authorized by law. Given the partial disclosure of those who received fee waivers from the FTC since January 1, 2009, the full disclosure of all those granted fee waivers is necessary to complete a portrait of how the agency grants these waivers.

For instance, does the agency's process for determining fee waivers take into consideration conclusory statements of how the information would contribute to the public understanding, as contained in FOIA request 2009-00778 by the AFGE, AFL-CIO?[11] "The proper payment of federal employees under the FLSA is required . . . and citizen review of the federal governments [sic]compliance with law is in the public interest and of interest to the general public." Certainly, this statement falls within the same category as merely stating "public concern with the 'integrity and operations' of the government" while failing to explain how the information would enhance the public's understanding of those operations. *Judicial Watch Inc. v. Dep't of Justice*, 122 F. Supp. 2d 5, 11 (D.D.C. 2000). With the FTC's disclosure of some fee waiver recipients who simply failed to explain with any detail at all how the requested information would significantly contribute to the public's understanding of the government, the public has a pressing need to understanding how the FTC determines, under the law, whether or not a person or entity qualifies for a fee waiver.

### Cause of Action is Entitled to News Media Requester Status

Additionally, Cause of Action asks that it not be charged search or review fees for these requests because it qualifies as a "representative of the news media, or news media requester," under FOIA and FTC regulation 16 C.F.R. § 4.8(b)(2). In *National Security Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989), the Court of Appeals for the District of Columbia Circuit noted that FOIA's legislative history demonstrates that "it is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected. . . . In fact, any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (emphasis added), cited in *id*.

Cause of Action is organized and operated, *inter alia*, to publish and broadcast news, *i.e.*, information that is about current events or that would be of current interest to the public. Cause

---

[11] "The proper payment of federal employees under the FLSA is required… and citizen review of the federal governments [sic] compliance with law is in the public interest and of interest to the general public." *See* FOIA Request of AFGE, AFL-CIO, Mar. 17, 2009 (FOIA-2009-00778).

Ms. Sarah Mathias
January 27, 2012
Page 7

of Action routinely and systematically disseminates information to the public in several ways, as described above. Cause of Action maintains a frequently visited website, causeofaction.org. Additionally, since September 2011, Cause of Action has regularly and continuously published an e-mail newsletter. This newsletter provides subscribers with regular updates regarding Cause of Action's activities and information the organization has received from government entities. Cause of Action also disseminates information via Twitter and Facebook. Cause of Action gleans the information it regularly publishes in its online newsletter from a wide variety of sources, including FOIA requests, government agencies, universities, law reviews, and even other news sources. Cause of Action researches issues on government transparency and accountability, the use of taxpayer funds, and social and economic freedoms; regularly reports on this information; analyzes relevant data; evaluates the newsworthiness of the material; and puts the facts and issues into context. Cause of Action uses technology—including but not limited to the Internet, Twitter, and Facebook—to publish and distribute news about current events and issues that are of current interest to the general public. All of these activities are hallmarks of publishing, news, and journalism. Based on these extensive publication activities, Cause of Action qualifies for a fee waiver as a "representative of the news media, or news media requester," under FOIA and agency regulations.

Cause of Action's activities clearly fall within the statutory definition of this term. 5 U.S.C. § 552(a)(4)(A)(ii)(III) defines "representatives of the news media" broadly to include organizations that disseminate news through electronic communications, including "*publishers of periodicals*...who make their products available for purchase by or subscription by or free distribution to the general public." 5 U.S.C. § 552(a)(4)(A)(ii)(III) (emphasis added). Moreover, the FOIA statute itself, as amended in 2007, explicitly defines "representative of the news media"—a term that had previously been undefined in the statute—to specifically include organizations, such as Cause of Action, that regularly publish and disseminate online periodicals, e.g., newsletters.[12] The statutory definition unequivocally commands that organizations that electronically disseminate information and publications via "alternative media *shall* be considered to be news-media entities."[13] As the plain language of the statute makes abundantly

---

[12] The FOIA statute, as amended in 2007, defines "representative of the news media" as follows:

> [T]he term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. In this clause, the term "news" means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public. These examples are not all-inclusive. Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), *such alternative media shall be considered to be news-media entities*.

5 USCS § 552(a)(ii)(III) (emphasis added).

[13] *Id.* (emphasis added). *See generally Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661-662 (2007) (noting the well-established proposition that, as used in statutes, the word "shall" is generally imperative or mandatory).

Ms. Sarah Mathias
January 27, 2012
Page 8

clear, then, an organization that regularly disseminates news via an online newsletter or periodical, such as Cause of Action, is a "representative of the news media" under FOIA.

The statute controls, and its plain language trumps inconsistent administrative regulations.[14] But straightforward application of controlling case law in the District of Columbia also requires the conclusion that Cause of Action is a "representative of the news media" as defined in applicable FTC regulations. In *Electronic Privacy Information Center v. Dep't of Defense*, the court broadly construed a Department of Defense regulation defining "representative of the news media" that is textually indistinguishable from 34 C.F.R. §5.31(f) to include a 501(c)(3) that, like Cause of Action, maintains a frequently visited website and regularly publishes an e-mail newsletter.[15] Under well-established precedent, then, a 501(c)(3) requester that regularly publishes online newsletters, such as Cause of Action, is entitled to a fee waiver as a "representative of the news media," where the agency's own regulations explicitly provide that "publishers of periodicals" qualify as representatives of the news media.[16]

The information requested here concerns current events, the operations and activities of the government, and will undoubtedly be of current interest to a large segment of the general public. Cause of Action will ultimately disseminate the information it is statutorily entitled to, *inter alia*, through its regularly published online newsletter, website, and social media. Thus, the plain language of 5 U.S.C. § 552(a)(4)(A)(ii)(III), controlling precedent, and the agency's regulations unequivocally require the conclusion that Cause of Action is a representative of the news media.

**Perfected FOIA Request of Cause of Action**

If upon review of our appeal, the FTC continues to deny Cause of Action's claims for a fee waiver under the public interest exception and continues to classify Cause of Action as "other" rather than a "representative of the news media," then please allow this letter to serve as a perfected FOIA request to Cause of Action's initial August 30, 2011 letter or October 28, 2011 letter. Cause of Action therefore requests the following:

**"Guides" Documents**
1. All records relating to the drafting, formulation, and revision of the Guides Concerning the Use of Endorsements and Testimonials in Advertising concerning social media authors or bloggers between January 1, 2009 and September 6, 2011.

---

[14] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n. 9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." (citations omitted)).

[15] 241 F. Supp. 2d. 5, 12-15 (D.D.C. 2003). The court pointedly noted that "a 'periodical,' unlike a daily newspaper, has been defined simply as 'a publication issued at regular intervals of more than one day.'" *Id.* at 14 n.4 (quoting American Heritage Dictionary, Second College Edition, at p. 923 (2000)).

[16] *See id.* at 12 (agency's "own regulation establishes that…[an organization] is a representative of the news media" because the organization "publishes a periodical…, which is a biweekly electronic newsletter" (citations omitted)).

Ms. Sarah Mathias
January 27, 2012
Page 9

### Fee Waiver Documents

2. All documents, including e-mail communications, referring or relating to FTC orders, decisions, memoranda, interpretations, instructions, statements of policy, or guidelines to staff for the purposes of evaluating fee waiver requests under the public interest exception.

3. All documents, including e-mail communications, referring or relating to the process by which FTC determined that Cause of Action was not entitled to a fee waiver for either its August 30, 2011 FOIA request or October 28, 2011 FOIA request.

If you do not understand this appeal or any portion thereof, or if you require further clarification of this request, please contact Daniel Epstein (Daniel.Epstein@causeofaction.org) or Michael Wilt (Michael.Wilt@causeofaction.org) at 202-507-5880. We look forward to receiving the requested documents from the August 30,2011 FOIA request, the October 28, 2011 FOIA request, and this letter's FOIA request, as well as a waiver both search and duplication costs within twenty (20) business days. Thank you for your cooperation.

Sincerely,

Michael Wilt
Staff Attorney


Encl.: "Responding to Document Requests" and "Definitions"
   Correspondence of Cause of Action and FTC Re: FOIA-2011-01431/FOIA-2012-00227

## Responding to Document Requests

1. In complying with this request, you should produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You should also produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Requested records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to Cause of Action.

2. In the event that any entity, organization or individual denoted in this request has been, or is also known by, any other name than that herein denoted, the request shall be read also to include that alternative identification.

3. Cause of Action's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. When you produce documents, you should identify the paragraph in Cause of Action's request to which the documents respond.

5. It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same documents.

6. If any of the requested information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), you should consult with Cause of Action Foundation staff to determine the appropriate format in which to produce the information.

7. If compliance with the request cannot be made in full, compliance shall be made to the extent possible and shall include an explanation of why full compliance is not possible.

8. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

9. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

10. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you should produce all documents that would be responsive as if the date or other descriptive detail were correct.

11. The time period covered by this request is included in the attached request. To the extent a time period is not specified, produce relevant documents from January 1, 2009, to the present.

12. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery.

13. All documents shall be Bates-stamped sequentially and produced sequentially.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmation, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic,

by document or otherwise, and whether in a meeting, by telephone, facsimile, email, regular mail, telexes, releases, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The singular includes plural numbers, and vice versa. The masculine includes the feminine and neutral genders.

4. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

6. The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.