EXHIBIT 15



CAUSE
of ACTION
Advocates for Government Accountability

A 501(c)(3) Nonprofit Corporation

April 4, 2012

**SENT VIA EMAIL AND CERTIFIED MAIL**

Ms. Dionne J. Stearns
Assistant General Counsel, Federal Trade Commission
Freedom of Information Act Appeal
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Facsimile: 202-326-2477
Email: dstearns@ftc.gov

**RE: FREEDOM OF INFORMATION ACT APPEAL (FOIA-2012-00687)**

Dear Ms. Stearns:

We write in response to the FTC's letter dated March 19, 2012 (March 19 letter), in which the Federal Trade Commission (FTC) granted "partial access" to documents we requested but denied access to other requested documents.[1]  In the March 19 letter, the FTC classified Cause of Action as an "other" requestor.[2]  We appeal both that classification and the FTC's failure to appropriately respond to our request, including the FTC's failure to produce identifying information for each document withheld, presumably under purported exemptions to the Freedom of Information Act (FOIA).[3]

**The FTC's Document Production Was Insufficient**

In our Jan. 27, 2012 FOIA letter, we requested "all records relating to the drafting, formulation, and revision of the Guides" in our request, as well as "all documents . . . referring or relating to FTC orders, decisions, memoranda, interpretations, instructions, statements of policy, or guidelines to staff" relating to how the FTC analyzes fee waiver requests.[4]  We also requested documents relating to the FTC's decision to deny our prior requests for fee waivers.

---

[1] Letter from Dionne J. Stearns, Assistant General Counsel, FTC, to Daniel Epstein, Executive Director, Cause of Action (Mar. 19, 2012) (hereinafter "Stearns Letter").
[2] *Id.*
[3] 5 U.S.C. § 552.
[4] FOIA Request (FOIA-2012-00687) of Michael Wilt, Staff Attorney, Cause of Action, to Sarah Mathias, Associate General Counsel, FTC, Jan. 27, 2012.

Ms. Dionne J. Stearns
April 4, 2012
Page 2

According to the March 19 letter, the FTC located 92 pages of responsive records, of which 76 pages were produced to Cause of Action.[5]  The FTC withheld 16 pages in their entirety.  We address our concerns with the March 19 letter in response to our request in turn.

1) The FTC must describe redacted documents in a "*Vaughn* index."

Cause of Action requested that the FTC produce an index of exempt documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1972).[6]  As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient identifying information "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[7]  Moreover, the *Vaughn* index must "describe each document or portion thereof withheld, and for each withholding, it must discuss the consequences of supplying the sought-after information."[8]  Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[9]

The FTC stated in its March 19 letter that documents existed, were exempt under FOIA because they "contain[ed] staff analyses, opinions, and recommendations," and so, therefore, Cause of Action cannot obtain the documents in their entirety.[10]  The FTC did not state, with any sufficient identifying information, what these documents actually were.  A description of each page permits a "reasoned judgment as to whether the material is actually exempt under FOIA."[11]  FTC failed to provide a description of documents that could allow for a reasoned judgment at to materiality, and therefore, has forced the requestor to accept the conclusion that a body of documents is exempt without sufficiently detailing the contents of these documents in a manner beyond a generic description.  This sort of response from the federal government is contrary to both the letter and spirit of FOIA.  We demand that you provide a *Vaughn* index of the 16 withheld pages of documents so that Cause of Action can assess whether those documents are, in fact, exempt.  If the FTC does not produce such an index, Cause of Action will bring forth litigation and the FTC will be required to supply such an index and the requested documents for *in camera* inspection.

The FTC also stated that some documents were "prepared in anticipation of litigation."[12]  The FTC must state why it believes such documents were prepared in anticipation of litigation.  The FTC's position appears to be that any requests for fee waivers are necessarily matters for litigation, and as such, exempt under Exemption 5 of FOIA.  Such an interpretation is patently unreasonable.

---

[5] Stearns Letter, *supra* note 1.
[6] *Supra* note 4.
[7] Founding Church of Scientology v. Bell, 603 F.2d 945,949 (D.C. Cir. 1979) (emphasis added).
[8] King v. Department of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added).
[9] *Id.* at 224 (emphasis supplied); *citing* Mead Data Central v. Department of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).
[10] Stearns Letter, *supra* note 1.
[11] *Bell*, 945 at 949.
[12] Stearns Letter, *supra* note 1.

Ms. Dionne J. Stearns
April 4, 2012
Page 3

Again, Cause of Action appeals the FTC's insufficient production of an index and any reasonable description of the specific documents withheld under the purported exemptions of FOIA.

2) The FTC must state with particularity whether the requested documents are in its possession.

In the March 19 letter, the FTC refers Cause of Action to the FTC's handbook published on FTC's website. Specifically, the FTC wrote:

> In addition, the "statements of policy or guidelines" records you requested concerning fee waiver determinations are on the Federal Trade Commission's ("FTC") public record. A formal Freedom of Information Act request is not necessary to obtain this material. Specifically, the Federal Trade Commission's Freedom of Information Act & Privacy Act Handbook can be found on the FTC's website at: http://www.ftc.gov/foia/readingroom.shtm.[13]

While the FTC indicates that the handbook is "the statements of policy or guidelines," the FTC did not state whether or not documents "referring or relating to FTC orders, decisions, memoranda, interpretations, instructions . . ." exist.[14] As the FTC is undoubtedly aware, FOIA does not protect internal agency "secret law."[15] If it is the FTC's contention that there is not a single document, including e-mail communications, that exists which instructs or provides guidance to staff members on making fee waiver determinations beyond the documents the FTC released (a GSA memo "Your Right to Federal Records" and a DOJ memo "Fees and Fee Waivers,") or the FTC handbook, then the FTC must respond in the affirmative. If it is the FTC's contention that the documents the FTC released comprise the entirety of FTC's guidance to staff for analysis of the fee waiver process, then the FTC must respond in the affirmative. If there are documents that have been withheld under a purported FOIA exemption, then respond affirmatively and list those documents with reasonable specificity in a *Vaughn* index.

Additionally, no documents regarding the "drafting, formulation, and revision of the Guides" were included in the FTC's production letter. If it is the FTC's contention that there are no documents relating to the drafting, formulation, and revision of the Guides, beyond that which has been publicly released on the FTC website, then respond affirm this contention. If it is the FTC's contention that, prior to publishing the Guides, there were no email communications or internal deliberations regarding the Guides, then affirm this contention. If there are documents that are pre-decisional, affirm as much and provide a *Vaughn* index description of the documents. For instance, describing an e-mail communication on a certain date between certain persons relating to a certain topic regarding the drafting of the Guides would be sufficient. Otherwise, if no such documents exist, please respond affirmatively.

---

[13] Stearns Letter, *supra* note 1.
[14] *Id.*
[15] NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 137-38 (1975).

Ms. Dionne J. Stearns
April 4, 2012
Page 4

It is difficult to appeal a specific withholding of documents on an exemption basis when a requestor does not know whether a document exists or does not know the contents of a specific document. If a requestor is merely told that there exist certain documents that are exempt, it is impossible to determine if those documents are, in fact, exempt. Please comply with FOIA and applicable judicial decisions by stating whether the documents requested do or do not exist, and if they do exist, identify those documents on a document-by-document basis and state why each document is exempt. Otherwise, Cause of Action will have no choice but to ask a court to determine whether the documents the FTC is withholding are in fact exempt. If the FTC chooses not to be transparent in its withholding of documents, then a court will require it to be.

Finally, we call your attention to President Obama's January 21, 2009 Memorandum concerning the Freedom of Information Act, in which he states:

> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA. . . . The presumption of disclosure should be applied to all decisions involving FOIA.[16]

On the same day, President Obama spoke on FOIA to incoming members of the Cabinet and staff of the White House:

> The old rules said that if there was a defensible argument for not disclosing something to the American people, then it should not be disclosed. That era is now over. Starting today, every agency and department should know that this administration stands on the side not of those who seek to withhold information but those who seek to make it known. To be sure, issues like personal privacy and national security must be treated with the care they demand. But the mere fact that you have the legal power to keep something secret does not mean you should always use it. The Freedom of Information Act is perhaps the most powerful instrument we have for making our government honest and transparent, and of holding it accountable. And I expect members of my administration not simply to live up to the letter but also the spirit of this law.[17]

Please indicate whether FTC believes that the President's executive order does or does not apply to it, and if so whether FTC's withholding of documents and failure to describe each document withheld is both within the spirit and letter of the law.

---

[16] PRESIDENT BARACK OBAMA, *Memorandum for the Heads of Executive Departments and Agencies, Subject: Freedom of Information Act*, Jan. 21, 2009, *available at* http://www.whitehouse.gov/the-press-office/freedom-information-act.

[17] PRESIDENT BARACK OBAMA, *Remarks by the President in Welcoming Senior Staff and Cabinet Secretaries to the White House*, Jan. 21, 2009, *available at* http://oversight.house.gov/hearing/foia-in-the-21st-century-using-technology-to-improve-transparency-in-government/.

Ms. Dionne J. Stearns
April 4, 2012
Page 5

## Cause of Action Is Entitled to a Complete Waiver of Fees (Public-Interest Purpose).

Cause of Action requests a waiver of both search and review fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  As you know, that statute provides that the requested documents shall be furnished without or at reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Cause of Action, in the present matter, satisfies all of the required elements for a fee waiver.

1) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government.

The subject matter of the requested records specifically concerns identifiable "operations or activities of the government" because it relates to the FTC's granting of fee waivers and its formulation of the Guides concerning endorsements.  The requested information will also give the public a greater understanding of how the FTC grants fee waivers and the process by which it created the Guides.  Disclosure of the requested information is therefore likely to contribute significantly to the understanding by the public at large of the operations and activities of the government, as opposed to the individual understanding of the requester or a narrow segment of interested persons.[18]  The documents requested are also not in the public domain, and therefore would be of value to members of the public through disclosure.

2) Disclosure of the requested information is not in the commercial interest of Cause of Action.

Cause of Action is a nonprofit organization as defined under Section 501(c)(3) of the Internal Revenue Code.  Our organization is committed to protecting the public's right to be aware of the activities of government agencies and to ensuring the lawful and appropriate use of government funds by those agencies.  Cause of Action will make no profit from the disclosure of this information and will use it to further the knowledge-interests of the general public in how the FTC grants fee waivers under FOIA and how it creates policies regarding fee waiver denials and policies related to enforcement regulations such as the Guides.  Even if disclosure of information creates a profit motive, that is not dispositive for the commercial interest test; media or scholars could have a profit motive, as long as the dissemination of the information is in their professional capacity and would further the public interest.[19]

3) Cause of Action has an ability to disseminate the requested information to the public and specifically intends to do so.

Cause of Action uses a combination of research, litigation, advocacy, and regularly disseminated publications to advance its mission.  Our staff has a combined 20 years of expertise in government oversight, investigative reporting, and federal public interest litigation.  These

---

[18] *See, e.g.*, Carney v. Department of Justice, 19 F.3d 807, 814 n.3 (2d Cir. 1994); Prison Legal News v. Lappin, 436 F. Supp. 2d 17, 27 n.5 (D.D.C. 2006),
[19] *See* Campbell v. Department of Justice, 164 F.3d 20, 38 (D.C. Cir. 1998).

Ms. Dionne J. Stearns
April 4, 2012
Page 6

professionals will analyze the information responsive to this request, use their editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public, whether through Cause of Action's regularly published online newsletter, memoranda, reports, or press releases.  In addition, Cause of Action will disseminate any relevant documents it acquires from this request to the public through its website, www.causeofaction.org, which also includes links to thousands of pages of documents Cause of Action acquired through its previous FOIA requests, as well as documents related to Cause of Action's litigation and agency complaints. Finally, Cause of Action intends to create two reports titled "How the FTC Denies Fee Waivers to Organizations That Seek Information About FTC Operations" and "The FTC and the Guides Concerning Endorsements: Why the Change?" within two weeks of the conclusion of the agency's production of documents which will be published on www.causeofaction.org, distributed to the news media, and sent to interested persons through our regular periodicals, including "Agency Check" and "Cause of Action News."  An ability to show the presence of a website with occasional, consistent traffic is enough to show that a requester has an ability to disseminate information.[20]

The release of information garnered through this request is not in Cause of Action's commercial interest pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  Because disclosure of this information is in the public interest and will contribute significantly to public understanding of the operations or activities of the government, any fees should be waived pursuant to both FOIA and agency regulations.

**Cause of Action Is Entitled to News Media Requester Category Status.**

Cause of Action also asks that it not be charged search or review fees for this request because it qualifies as a "representative of the news media, or news media requester," under 5 U.S.C. § 552(a)(4)(A)(ii)(II).[21]  In *National Security Archive v. U.S. Dep't of Defense*,[22] the Court of Appeals for the District of Columbia Circuit noted that FOIA's legislative history demonstrates that "it is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected . . . . In fact, any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'"[23]

---

[20] Fed. CURE v. Lappin, 602 F. Supp. 2d 197 (D.D.C. 2009).

[21] Other agencies of the federal government have granted Cause of Action "representative of the news media" category status. *See, e.g.*, FOIA Request HQ-2012-00752-F, news media status granted on Feb. 15, 2012; FOIA Request No. 12-00455-F (Department of Education), news media status granted on Jan. 20, 2012; FOIA Request HQ-2012-00752-F (Department of Energy), news media status granted on Feb. 15, 2012; FOIA Request 12-267 (Federal Emergency Management Agency), news media status granted on Feb. 9, 2012; FOIA Request CRRIF 2012-00077 (Department of Commerce), interim rolling production of documents on Mar. 1, 2012 without charge. As the D.C. federal circuit court noted in *Oglesby v. United States Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990), agencies should grant news media requestor status when other agencies have done so because of "the need for uniformity among the agencies in their application of FOIA." *Id.* at 66.

[22] 880 F.2d 1381, 1386 (D.C. Cir. 1989)

[23] 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (emphasis added), cited in *id.*

Ms. Dionne J. Stearns
April 4, 2012
Page 7

  <u>Cause of Action is organized and operated, *inter alia*, to publish and broadcast news, i.e., information that is about current events or that would be of current interest to the public</u>. Cause of Action routinely and systematically disseminates information to the public in several ways. Cause of Action maintains a frequently visited website, www.causeofaction.org. Additionally, since September 2011, Cause of Action has published an e-mail newsletter. This newsletter provides subscribers with regular updates regarding Cause of Action's activities and information the organization has received from government entities. Cause of Action also disseminates information via Twitter and Facebook. Cause of Action also produces a newsletter titled "Agency Check," which informs interested persons about actions of federal agencies, and another periodical, "Cause of Action News."[24]

  Cause of Action gleans the information it regularly publishes in its newsletters from a wide variety of sources, including FOIA requests, government agencies, universities, law reviews, and even other news sources. Cause of Action researches issues on government transparency and accountability, the use of taxpayer funds, and social and economic freedoms; regularly reports on this information; analyzes relevant data; evaluates the newsworthiness of the material; and puts the facts and issues into context. Cause of Action uses technology—including but not limited to the Internet, Twitter, and Facebook—to publish and distribute news about current events and issues that are of current interest to the general public. These activities are hallmarks of publishing, news, and journalism. Based on these extensive publication activities,[25]

---

[24] CAUSE OF ACTION WEBSITE, Newsletters, *available at* http://causeofaction.org/newsletters/.

[25] *See, e.g.,* Matthew Boyle, *Report: ACORN-affiliated group gets $300,000 more in taxpayer money*, THE DAILY CALLER, (Sept. 16, 2011), *available at* http://dailycaller.com/2011/09/16/report-acorn-affiliated-group-gets-300000-more-in-taxpayer-money/; Matthew Boyle, *Long-time ACORN affiliate secures $350,000 in new taxpayer funding*, THE DAILY CALLER, (Sept. 19, 2011), *available at* http://dailycaller.com/2011/09/19/long-time-acorn-affiliate-secures-350000-in-new-taxpayer-funding/; Paul Streckfus, *Accountability Group Seeks IRS Investigation of ACORN Affiliates*, EO TAX JOURNAL, Ed. 2011-173, (Oct. 24, 2011); Bobby McMahon, *EPA Stalls Utility MACT Until December, Fights Industry Bid For Year Delay*, INSIDEEPA, (Oct. 24th, 2011), *available at* http://insideepa.com/201110212379934/EPA-Daily-News/Daily-News/epa-stalls-utility-mact-until-december-fights-industry-bid-for-year-delay/menu-id-95.html; Paul Streckfus, *More Commentary on NCPL's Annual Conference*, EO TAX JOURNAL, Ed. 2011-185, (Nov. 9, 2011); Patrick Reis and Darren Goode, *Senators hedge bets ahead of CSAPR vote - Second anti-reg bill to get vote - Perry's debate gaffe - Acrimony hits new heights in Solyndra spat*, POLITICO, (Nov. 10, 2011), *available at* http://www.politico.com/morningenergy/1111/morningenergy374.html; Paul Streckfus, *More Commentary on NCPL's Annual Conference*, EO TAX JOURNAL, Ed. 2011-187, (Nov. 15, 2011); Frank Maisano, *Nov 14 Energy Update: Chu'd Out in Congress*, ENERGYNOW!, (Nov. 15, 2011), *available at* http://www.energynow.com/energypanel/2011/11/15/nov-14-energy-update-chud-out-congress; Conn Carroll, *Labor board broke federal law on Boeing suit*, WASHINGTON EXAMINER, (Nov. 27, 2011), *available at* http://campaign2012.washingtonexaminer.com/article/labor-board-broke-federal-law-boeing-suit; Matthew Vadum, *Obama uses taxpayer cash to back ACORN Name changes used to dodge the law*, WASHINGTON TIMES, (Nov. 28, 2011), *available at* http://www.washingtontimes.com/news/2011/nov/28/obama-uses-taxpayer-cash-to-back-acorn-name-change/; Matthew Boyle, *Obama administration, GAO appear to have ignored group's ACORN affiliation to award $700K*, THE DAILY CALLER, (Nov. 28, 2011), *available at* http://dailycaller.com/2011/11/28/obama-administration-gao-appear-to-have-ignored-groups-acorn-affiliation-to-award-700k/; WORLDNETDAILY, *See which radicals got more taxpayer dollars: Support maintained despite organization's accounting 'problems,'* (Nov. 29, 2011), *available at* http://www.wnd.com/index.php?fa=PAGE.view&pageId=372685; Perry Chiaramonte, *ACORN Misused Federal Grant Funds, Report Says*, FOX NEWS, (Nov. 30, 2011), *available at* http://www.foxnews.com/politics/2011/11/30/acorn-misused-federal-grant-funds-report-says/; Marsha Shuler, *Group challenges La. contribution limit*, THE ADVOCATE, (Nov. 30, 2011), *available at* http://theadvocate.com/news/1437637-123/group-challenges-la.-contribution-limit; Margaret Menge, *Justice Audit*

Ms. Dionne J. Stearns
April 4, 2012
Page 8

Cause of Action qualifies for a fee waiver as a "representative of the news media, or news media requester," under FOIA and agency regulations.

Cause of Action's activities clearly fall within the statutory definition of this term. 5 U.S.C. § 552(a)(4)(A)(ii)(III) defines "representative[s] of the news media" broadly to include organizations that disseminate news through electronic communications, including "*publishers of periodicals . . . who make their products available for purchase by or subscription by or free distribution to the general public.*"[26] Moreover, the FOIA statute itself, as amended in 2007, explicitly defines "representative of the news media"—a term that had previously been undefined in the statute—to specifically include organizations, such as Cause of Action, that regularly publish and disseminate online periodicals, e.g., newsletters.[27] The statutory definition unequivocally commands that organizations that electronically disseminate information and publications via "alternative media *shall* be considered to be news-media entities."[28] As the plain language of the statute makes abundantly clear, then, an organization that regularly disseminates news via an online newsletter or periodical, such as Cause of Action, is a "representative of the news media" under FOIA.

In *Electronic Privacy Information Center v. Dep't of Defense*, the court broadly construed a Department of Defense regulation defining "representative of the news media" to include a 501(c)(3) that, like Cause of Action, maintains a frequently visited website and

---

*Alleges ACORN Spin-Off in New York Misused Money*, NEWSMAX, (Dec. 1, 2011), *available at* http://www.newsmax.com/US/ACORN-justice-audit-funds/2011/12/01/id/419672; PITTSBURGH TRIBUNE-REVIEW, *Acorn lives: Meet AHCOA*, (Dec. 5, 2011), *available at* http://www.pittsburghlive.com/x/pittsburghtrib/opinion/s_770135.html; Tom Fitton, *Obama Administration Violating ACORN Funding Ban According to New Audit*, BIG GOVERNMENT, (Dec. 5, 2011), *available at* http://biggovernment.com/tfitton/2011/12/05/obama-administration-violating-acorn-funding-ban-according-to-new-audit/; NATIONAL RIGHT TO WORK COMMITTEE, *NLRB: Law Breakers?*, (Dec. 10, 2011), *available at* http://www.nrtwc.org/nlrb-law-breakers/.

[26] 5 U.S.C. § 552(a)(4)(A)(ii)(III) (emphasis added).
[27] The FOIA statute, as amended in 2007, defines "representative of the news media" as follows:

> [T]he term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. In this clause, the term "news" means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public. These examples are not all-inclusive. Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), *such alternative media shall be considered to be news-media entities.*

5 U.S.C. § 552(a)(ii)(III) (emphasis added).
[28] *Id.* (emphasis added). *See generally* Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 661-662 (2007) (noting the well-established proposition that, as used in statutes, the word "shall" is generally imperative or mandatory).

Ms. Dionne J. Stearns
April 4, 2012
Page 9

regularly publishes an e-mail newsletter.[29]  Under well-established precedent, then, a 501(c)(3) requester that regularly publishes online newsletters, such as Cause of Action, is entitled to a fee waiver as a "representative of the news media," where the agency's own regulations explicitly provide that "publishers of periodicals" qualify as representatives of the news media.[30]

     The information requested here concerns current events and will undoubtedly be of current interest to a large segment of the general public.  Cause of Action will ultimately disseminate the information it is statutorily entitled to, *inter alia*, through its regularly published online newsletter.  Additionally, Cause of Action will take the information that is disclosed, using its editorial skills and judgment, to publish the two news articles listed above that will be published on our website, distributed to other media sources, and distributed to interested persons through our newsletters.

     The plain language of 5 U.S.C. § 552(a)(4)(A)(ii)(III), controlling precedent, and the agency's regulations unequivocally require the conclusion that Cause of Action is a representative of the news media.

     If you do not understand this appeal or any portion thereof, or if you require further clarification of this request, please contact me (Keith.Gates@causeofaction.org) at 202-507-5880 or Michael Wilt (Michael.Wilt@causeofaction.org).  We look forward to receiving the requested documents as well as a waiver of all costs within twenty (20) business days.  Thank you for your cooperation.

                           Sincerely,

                           KEITH GATES
                           SENIOR ATTORNEY

Encl.: "Responding to Document Requests" and "Definitions"
       FTC March 19, 2012 letter and FOIA-2012-000687

---

[29] 241 F. Supp. 2d. 5, 12-15 (D.D.C. 2003).  The court pointedly noted that "a 'periodical,' unlike a daily newspaper, has been defined simply as 'a publication issued at regular intervals of more than one day.'" *Id.* at 14 n.4 (quoting American Heritage Dictionary, Second College Edition, at p. 923 (2000)).

[30] *See id.* at 12 (agency's "own regulation establishes that…[an organization] is a representative of the news media" because the organization "publishes a periodical…, which is a biweekly electronic newsletter" (citations omitted)).

## Responding to Document Requests

1. In complying with this request, you should produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You should also produce documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. Requested records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to Cause of Action.

2. In the event that any entity, organization or individual denoted in this request has been, or is also known by, any other name than that herein denoted, the request shall be read also to include that alternative identification.

3. Cause of Action's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4. When you produce documents, you should identify the paragraph in Cause of Action's request to which the documents respond.

5. It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same documents.

6. If any of the requested information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), you should consult with Cause of Action Foundation staff to determine the appropriate format in which to produce the information.

7. If compliance with the request cannot be made in full, compliance shall be made to the extent possible and shall include an explanation of why full compliance is not possible.

8. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

9. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

10. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you should produce all documents that would be responsive as if the date or other descriptive detail were correct.

11. The time period covered by this request is included in the attached request. To the extent a time period is not specified, produce relevant documents from January 1, 2009, to the present.

12. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery.

13. All documents shall be Bates-stamped sequentially and produced sequentially.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmation, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic,

by document or otherwise, and whether in a meeting, by telephone, facsimile, email, regular mail, telexes, releases, or otherwise.

3.  The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The singular includes plural numbers, and vice versa. The masculine includes the feminine and neutral genders.

4.  The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5.  The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

6.  The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.