**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
CAUSE OF ACTION,                )
                                )
          Plaintiff,            )
                                )
     v.                         )  Civ. Action No. 1:12-cv-00850-EGS
                                )
FEDERAL TRADE COMMISSION,       )
                                )
          Defendant.            )
_____ )
```

**MEMORANDUM OPINION**

Cause of Action ("COA" or "plaintiff") brings this case regarding three requests it made to Defendant, Federal Trade Commission ("FTC"), under the Freedom of Information Act ("FOIA"). Plaintiff claims that the Defendant improperly denied Plaintiff's fee waiver requests because the disclosure of information it requested is in the public interest or because COA is a representative of the news media. Plaintiff also argues that the agency improperly withheld certain documents under FOIA's Exemption 5.[1]. Pending before the Court is Defendant's motion for summary judgment.

Upon consideration of the motion, Plaintiff's response, Defendant's reply, the applicable law, and the entire record, and

---

[1] The FTC also withheld certain documents under FOIA's Exemption 6, which Plaintiff concedes were properly withheld. Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at n.20.

for the reasons set forth below, Defendant's motion for summary judgment is **GRANTED** with respect to the denial of fee waivers. With respect to the withholding of documents pursuant to Exemption 5, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiff is a nonpartisan, nonprofit organization that "uses public advocacy and legal reform strategies to ensure greater transparency in government and protect taxpayer interests and economic freedom." Complaint ("Compl.") ¶ 5. The FTC publishes "Guides Concerning the Use of Endorsements and Testimonials in Advertising" ("Guides"). In 2009 the FTC published revisions to the Guides, to include social media and bloggers. Compl. ¶ 9. Following the revisions, the Plaintiff initiated three FOIA requests in 2011 and 2012. *Id*. ¶¶ 12, 25, 47. Plaintiff was interested in using the requested information to inform the public how the Guides' revisions would impact bloggers and social media authors, and consequently affect First Amendment rights to speech. *Id*. ¶ 11.

### A. FOIA Request #1 (FOIA-2011-01431)

On August 30, 2011, Plaintiff submitted its first FOIA request to the FTC, assigned FOIA Request No. 2011-01431. Complaint Exhibit ("Compl. Ex.") 1, 2. The request sought (1) all records relating to the drafting, formulation, and revision of the Guides; (2) all records concerning the results of investigations into conduct by

bloggers or social media authors that allegedly violated the Guides;
(3) all records concerning the results of investigations into
conduct by companies that related to alleged violations of the
Guides; and (4) copies of any other requests for information made by
outside groups through FOIA during the last two years regarding
revisions to the Guides. Compl. Ex. 1. Plaintiff stated that the
information requested is in the public interest, and accordingly
requested a complete waiver of search and duplication fees. *Id*.

On September 22, 2011, the FTC denied Plaintiff's request for a
public interest fee waiver. Compl. Ex. 2. On September 26, 2011,
Plaintiff asked again for a public interest fee waiver and added a
request for a "representative of the news media" fee waiver. Compl.
Ex. 3. On October 7, 2011, the FTC denied both fee waiver requests.
Compl. Ex. 4. In the denial, the FTC designated Plaintiff as an
"Other (General Public)" requestor, which is only entitled to 100
pages of records free of charge in accordance with 16 C.F.R. §
4.8(b)(6). *Id*. The FTC released 100 pages of records to plaintiff
at that time. *Id.*

On October 28, 2011, Plaintiff administratively appealed the
FTC's denial of its public interest fee waiver. Compl. Ex. 5. On
November 29, 2011, the FTC affirmed its denial of Plaintiff's
request for a public interest fee waiver for this first FOIA
request, informing Plaintiff of its ability to appeal the FTC's
decision in district court. Compl. Ex. 6.

On December 12, 2011, Plaintiff requested that the FTC reconsider its denial of Plaintiff's appeal, reiterating its qualification for a public interest fee waiver for its first request. Compl. Ex. 9. On December 20, 2011, the FTC denied Plaintiff's appeal. Compl. Ex. 10.

On January 27, 2012, Plaintiff again requested that the FTC reconsider the denial of a public interest fee waiver for the first request and reiterated its qualification for a "representative of the news media" fee waiver. Compl. Ex. 12. On February 27, 2012, the FTC once again denied Plaintiff's request for both fee waivers. Compl. Ex. 13.

**B. FOIA Request #2 (FOIA-2012-00227)**

In response to the FTC's October 7, 2011 denial of its fee waiver request for its first FOIA request, Plaintiff made its second FOIA request on October 28, 2011, assigned FOIA Request No. 2012-00227. Compl. Ex. 5, 7. Plaintiff asked for (1) all FOIA requests where the FTC granted fee waivers under the public interest exception since January 1, 2009 and (2) documents referring or relating to the process in which the FTC determined the FOIA requests identified in (1) were within the fee waiver exception. *Id*. Plaintiff later requested a public interest fee waiver and "representative of the news media" fee waiver for this request on December 12, 2011. Compl. Ex. 8.

On January 6, 2012, the FTC denied Plaintiff both a public interest fee waiver and a "representative of the news media" fee waiver. Compl. Ex. 11. For purposes of determining fees associated with fulfilling plaintiff's FOIA request, the FTC once again designated Plaintiff as an "Other (General Public)" requester and therefore entitled to 100 pages out of 156 relevant pages free of charge, pursuant to 16 C.F.R. § 4.8(b)(6). Compl. Ex. 11; Defendant's Motion for Summary Judgment Exhibit ("Def.'s Mot. Summ. J. Ex.") T; Declaration of Nathaniel Fairbanks Gray ("Gray Decl.") ¶¶ 20-22. The FTC withheld eight documents consisting of twelve pages under Exemption 5. Def.'s Mot. Summ. J. Ex. T.

On January 27, 2012, Plaintiff appealed the FTC's denial of both its public interest fee waiver request for its second request and denial of its "representative of the news media" fee waiver request. Compl. Ex. 12. On February 27, 2012, the FTC affirmed its denial of both the public interest fee waiver request and the "representative of the news media" fee waiver request. Compl. Ex. 13. COA did not appeal the agency's withholding of documents pursuant to Exemption 5, and the agency did not address this issue in its letter denying the appeal. Compl. Exs. 12-13.

**B. FOIA Request #3 (FOIA-2012-00687)**

On January 27, 2012, Plaintiff made its third FOIA request, assigned FOIA Request No. 2012-00687. Compl. Ex. 12, 14. Plaintiff requested (1) all records relating to the drafting, formulation, and

revision of the Guides Concerning Use of Endorsements and
Testimonials in Advertising concerning social media authors and
bloggers between January 1, 2009 and November 6, 2011; (2) all
documents, including e-mail communications, referring or relating to
FTC orders, decisions, memoranda, interpretations, instructions,
statements of policy, or guidelines to staff for the purposes of
evaluating fee waiver requests under the public interest exception;
and (3) all documents, including e-mail communications, referring to
or relating to the process the FTC used to deny Plaintiff a fee
waiver. Compl. Ex. 12.

On March 19, 2012, the FTC informed COA that it had located
ninety-five pages of information responsive to the request. Compl.
Ex. 14; Declaration of Dione Jackson Stearns ("Stearns Decl.") ¶ 18;
Gray Decl. at ¶¶ 24, 26. The FTC released free of charge seventy-
nine pages relating to the second and third parts of the request,
and withheld five documents consisting of sixteen pages under
Exemption 5. Compl. Ex. 14; Def.'s Mot. Summ. J. Ex. T. Documents
9 and 10, consisting of one page each, are screenshots of
Plaintiff's website which were taken by a paralegal under the
direction of his supervising attorney and withheld under Exemption
5's deliberative process privilege and attorney work-product
privilege. *Id*. Document 11, consisting of four pages, Document 12,
consisting of four pages, and Document 13, consisting of six pages,
are memoranda written by a paralegal to a superior and were also

withheld under Exemption 5's deliberative process and attorney work-product privileges.  *Id*.  The FTC did not determine whether Plaintiff was entitled to a public interest fee waiver or a "representative of the news media" fee waiver for this FOIA request, explaining that it had only located ninety-five pages of responsive information, which COA was entitled to receive free of charge under 16 C.F.R. § 4.8(b)(6) even without a fee waiver.  Compl. Ex. 14.

On April 4, 2012, Plaintiff appealed the withholding and asserted its entitlement to both a public interest fee waiver and a "representative of the news media" fee waiver.  Compl. Ex. 15.  On May 7, 2012, the FTC affirmed its withholding and declared the fee waiver issue moot.  Compl. Ex. 16.

Plaintiff then initiated this suit on May 25, 2012.  The FTC moved for summary judgment.  The motion is ripe for resolution by the Court.

## II. STANDARD OF REVIEW

Summary judgment is granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under FOIA, all underlying facts

and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted).

In reviewing a motion for summary judgment under the FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B) (2012). The court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits or declarations are accorded "a presumption of good faith, which cannot

be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation omitted). An agency has the burden of demonstrating that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA,* 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

## III. ANALYSIS

The issues before this Court are (1) whether the FTC properly determined Plaintiff's qualification for public interest fee waivers and "representative of the news media" fee waivers for all three of Plaintiff's FOIA requests and (2) whether the FTC properly withheld documents under Exemption 5 for Plaintiff's second and third FOIA requests. The Court will address them in turn.

## A. FEE WAIVERS

The disputes regarding COA's fee waivers fall into three categories. First, COA argues that the FTC improperly denied Plaintiff a public interest fee waiver for its first and second FOIA requests. Second, COA claims the FTC improperly denied Plaintiff a "representative of the news media" fee waiver for the same requests. Finally, COA argues that the FTC improperly declared the fee waiver issue moot for Plaintiff's third FOIA request.

For the reasons that follow, the Court finds that the FTC was justified in denying Plaintiff a fee waiver for its first and second

FOIA requests.  Finally, the Court finds that the FTC properly declared the fee waiver issue moot for Plaintiff's third request.

## 1. Public Interest Fee Waiver

Fee waivers are granted if the requested information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requestor." 5 U.S.C. § 552(a)(4)(A)(iii) (2012).

The first prong of the test requires the requested information be in the public interest.  The FTC has promulgated a regulation setting out four requirements a party making a FOIA request must meet to satisfy this standard.  16 C.F.R. § 4.8(e)(2).  First, requestors must demonstrate that the information they seek concerns the *operations or activities of government*.  Second, they must demonstrate that the disclosure is *likely to contribute* to an understanding of the operations or activities of government.  Third, they must show that the disclosure will contribute to an understanding of the subject by the *public at large*.  Fourth, they must demonstrate that the information will *contribute significantly* to such understanding.  *Id.; see also Judicial Watch, Inc. v. U.S. Dept. of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004); *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).  All four requirements must be met in order to demonstrate that the request is in the public interest.  *Id.*

The second prong requires that the requested information not be in the requestor's commercial interest. First, the court must evaluate whether the requestor has a commercial interest that would be furthered by the information's disclosure. Second, the court must evaluate whether any identified commercial interest is sufficiently large in comparison with the public interest in disclosure, thus rendering any disclosure primarily in the commercial interest of the requestor. 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 16 C.F.R. § 4.8(e)(2); *Fed. CURE v. Lappin*, 602 F. Supp. 2d 197, 201 (D.D.C. 2009).

Courts are to keep in mind that Congress amended FOIA to ensure that it be "liberally construed in favor of waivers for noncommercial requestors." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (citation omitted). Fee waiver requests, however, should still be made with "reasonable specificity," *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (citing *McClellan*, 835 F.2d at 1285), and be based on more than "conclusory allegations," *Nat'l Treasury Employees Union v. Griffin,* 811 F.2d 644, 647 (D.C. Cir. 1987). The court shall review the FTC's fee waiver determinations *de novo* and its review "shall be limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii). The requester has the burden of proving that its request satisfies the public interest standard for fee waivers. *Larson*, 843 F.2d at 1483.

### a. Request #1 (FOIA-2011-01431)

Plaintiff is not entitled to a public interest fee waiver for its first request because it does not satisfy the "public interest" prong of the test.[2] Plaintiff fails the "public interest" prong of the test because the third element is not satisfied, even if the first, second, and fourth elements are satisfied.

---

[2] Plaintiff does not demonstrate any commercial interests in this request. However, Plaintiff's reasoning for satisfying the "commercial interest" prong of the test is flawed. Plaintiff argues that the information is not for commercial purposes since it is a nonprofit. Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") 26. The FTC, citing *Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1177-78 (10th Cir. 2005), responds that Plaintiff's nonprofit status does not automatically demonstrate its noncommercial interests in the request. Defendant's Reply in Support of its Motion for Summary Judgment ("Def.'s Reply") 3.

The Court agrees with the FTC that Plaintiff's nonprofit status does not automatically demonstrate Plaintiff has no commercial interests in the request. *See Consumers' Checkbook, Ctr. for Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 502 F. Supp. 2d 79, 89 (D.D.C. 2007) (hereinafter *Consumers' Checkbook*) (holding that the nonprofit requestor still had a commercial interest in the requested information since it would disseminate the information for a fee), *rev'd on other grounds*, 554 F.3d 1046 (D.C. Cir. 2009).

Nevertheless, the Court still finds that Plaintiff has sufficiently demonstrated its noncommercial interests in its request. A nonprofit will not have any commercial interests if its primary interest in the information is to distribute it to the public. *See Consumers' Checkbook*, 502 F. Supp. 2d at 89. Here, Plaintiff indicated that its interest in the information is to use it to perform government oversight functions. Pl.'s Opp'n at 26. Plaintiff has indicated that it is interested in using the information to inform the public about the Guides' effects on First Amendment rights to freedom of speech. Compl. Ex. 5. As a result, Plaintiff has demonstrated it has no commercial interests in its first request.

The Court finds the first element is satisfied because the requested information involves the *operations or activities of government*.  The information involves the operations and activities of government because it would provide insight into the FTC's decision-making process regarding the enforcement of the Guides; it concerns government investigations; and it involves communications between the government and other outside agencies.  Other courts in this Circuit have found similar information to involve the operations or activities of government.  *See Ctr. for Medicare Advocacy v. U.S. Dep't of Health & Human Servs.*, 577 F. Supp. 2d 221, 240-41 (D.D.C. 2008) (finding documents illustrating the decision-making process used by agencies to create a new hearings system involved the operations and activities of government); *Judicial Watch, Inc. v. U.S. Dep't of Transportation*, No. 02-566, 2005 U.S. Dist. LEXIS 14025, at *11-12 (D.D.C. July 8, 2005) (finding information regarding communications between a FAA Deputy Administrator and technology companies concerned the operations or activities of government).

Plaintiff also met its burden under the second element since the information is *likely to contribute* to public understanding. The information will likely contribute to public understanding because it could inform social media authors and bloggers about the Guides' effects on their activities.  *See Rossotti*, 326 F.3d at 1313-14 (finding that information would likely contribute to public

13

understanding as long as there is a potential for public understanding). Plaintiff has also indicated that the information on the FTC's Guides would inform the public about how government action impacts First Amendment rights. *Compare Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26 (D.D.C. 2006) (finding the requested information satisfied the second element because it would provide insight into how well the government managed prisons) *with Judicial Watch, Inc. v. U.S. Dep't of Justice*, 122 F. Supp. 2d 13, 18 (D.D.C. 2000) (hereinafter *Judicial Watch I)* (finding the requestor could not satisfy this element without demonstrating *how* the requested information will inform the public about government activities or operations).

The fourth element is also satisfied since plaintiff has shown the information will *contribute significantly* to public understanding. The FTC argues that the requested information would not significantly contribute to public understanding because the FTC has already published synthesized information on the Guides' enforcement online in a "What People Are Asking" document. *See* Def.'s Mot. Summ. J. at 11; Def.'s Reply at 8. The FTC also argues that it has published an article online regarding staff commentaries and closing letters on investigations into violations of the Guides. *Id.* Plaintiff, however, argues that not all information about the drafting of the Guides and about all relevant FTC investigations on possible violations of the Guides is publicly available. Pl.'s

14

Opp'n at 30. Furthermore, Plaintiff argues that the "What People are Asking" document is not sufficient to contribute to public understanding because the document is only an eight-page summary produced by the FTC that only vaguely illustrates how the agency enforces the Guides. *Id.*

The Court agrees with Plaintiff on this issue. To show that information will contribute significantly to public understanding, Plaintiff must demonstrate that the requested information has not met a threshold level of public availability. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998). When the requested information is not publicly available, it will more likely contribute significantly to public understanding. *See Fed. CURE*, 602 F. Supp. 2d at 205-06. However, even if some of the requested information is publicly available in synthesized form, there exists some significant benefit to public understanding if the plaintiff requests raw information from the agency to synthesize it and perform a public oversight function. *See Consumers' Checkbook*, 502 F. Supp. 2d at 87-88. Nevertheless, the primary beneficiary of the disclosure should still be the public. *Nat'l Treasury Employees Union*, 811 F.2d at 647-48; *Monroe-Bey v. FBI*, 890 F. Supp. 2d 92, 98 (D.D.C. 2012); *Van Fripp v. Parks*, No. 97-0159, 2000 U.S. Dist. LEXIS 20158, at *22. (D.D.C. Mar. 16, 2000).

Because Plaintiff claims not all information about the Guides' drafting and about specific FTC investigations is in the public

domain, the requested information would contribute to public

understanding.  Even if some synthesized information regarding the

Guides' enforcement and investigations is available online, there

may be some public benefit to Plaintiff receiving all relevant raw

information from the FTC regarding the enforcement and

investigations into the Guides to do an independent analysis and

synthesis of the information.

Nevertheless, Plaintiff did not satisfy the third element of

the public interest test because it has not demonstrated that the

requested information would increase understanding of the *public at*

*large*. 16 C.F.R. § 4.8(e)(2)(i)(C).  Accordingly, the Court finds

that Plaintiff has not met the public interest prong of the public

interest fee waiver test.

To show the requested information would increase understanding

of the public at large, Plaintiff must demonstrate "in detailed and

non-conclusory terms," that it has the intent and ability to

effectively convey the information to a broad segment of the public

and therefore, the FTC, as surrogate for the public, should foot the

bill for a fee waiver.  *See Rossotti*, 326 F.3d at 1312; *Judicial*

*Watch I*, 122 F. Supp. 2d at 18.  Although requestors are not

required to explain their dissemination plan with "pointless

specificity" to satisfy this element, they must identify several

methods of disseminating the information and provide some concrete

basis upon which the agency can conclude that those methods are

adequate to convey the requested information to a wide audience. *See*
*Rossotti*, 326 F.3d at 1314 (dissemination element satisfied where
plaintiff Judicial Watch identified nine ways it communicates
information to the public, including news releases, monthly
newsletters, radio and television programs it produces, and also
provided numerical estimates of the number of people reached through
some of these methods); *Fed. CURE*, 602 F. Supp. 2d at 204 (plaintiff
satisfied element where it "provided reasonably specific numbers
detailing its subscribers and readership" for its website,
newsletter and on-line discussion groups); *Judicial Watch Inc.*, 185
F. Supp. 2d at 62 (plaintiff described "several mechanisms" for
disseminating information, including its website, blast faxes, and
radio and television programs); *Landmark Legal Found. v. IRS*, Case
No. 97-1474, 1998 U.S. Dist. LEXIS 21722 at *4-5 (D.D.C. Sept. 22,
1998)(organization identified six methods of distribution and
provided estimates of number of people reached via website,
newsletters, blast faxes, letters to Congress, etc.).

In this case, by contrast, COA has not met its burden.
Throughout its voluminous correspondence with the FTC regarding its
first FOIA request, it identified only two methods of dissemination,
which it discussed only in footnotes: its website and articles
published by news media that have relied upon COA's past work on
other issues.  See Compl. Exs. 5, 12.  Plaintiff did not provide any
estimate of the number of people likely to view its website, nor did

it demonstrate other ways in which it would disseminate the information itself, without relying on another source.[3]  *Id.*  And although COA provided a string cite of articles authored and published by other outlets as a result of its past efforts to gather information on other topics, it specified no organizations which would disseminate *this* information.  *Id.*  Other courts have found similar claims lack the specificity and certainty to support a finding that a fee-waiver requestor has the ability to disseminate information to a reasonably broad segment of the public.  *See, e.g., Oglesby v. Dep't of the Army*, 920 F.2d 57, 66 n.11 (D.C. Cir. 1990) (finding a writer's past work insufficient to justify a fee waiver); *Judicial Watch I*, 122 F. Supp. 2d at 18-19 (finding the requestor did not show its intent and ability to disseminate when it had not identified the media contacts that would produce the requested information); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. Civ. 99-2315, 2000 U.S. Dist. LEXIS 19789 at *14-15 (D.D.C. Aug. 17, 2000) (finding requestor's past record in uncovering information "simply irrelevant" to fee waiver analysis because a FOIA analysis

---

[3] In its January 27, 2012 letter, COA argued it should receive a fee waiver as a representative of the news media – not under the public interest exemption – because it had published information on Facebook, Twitter, and via an email newsletter to "subscribers" during the previous five months.  Compl. Ex. 12 at 7.  Again, however, plaintiff provided no details about its online presence, including any information about numbers of subscribers, viewers or followers, nor did it mention the frequency of its posts or publications.

focuses on the "subject and impact of the particular disclosure, not the record of the requesting party").

In its Opposition, Plaintiff argues that it meets the dissemination element by pointing to its past experience turning raw materials into distinct works and disseminating information to its media contacts. Pl.'s Opp'n at 27. Plaintiff also claims it would disseminate the information through its media contacts, on its website, via its newsletter, and through its social media sites. Pl.'s Opp'n at 28. The FTC, however, correctly argues that Plaintiff did not provide most of this evidence during the lengthy administrative process, and correctly states that judicial review of fee waiver denials is limited to the administrative record. Def.'s Mot. Summ. J. at 12; *see* Def.'s Reply at 4-7.

Based on the foregoing, the Court concludes that plaintiff has not demonstrated with sufficient specificity that it has the ability to convey the information in its first FOIA request to the general public. Because the plaintiff did not satisfy the third element of the public interest prong of the test, the FTC properly denied Plaintiff a public interest fee waiver for its first request.

### b. Request #2 (FOIA-2012-00227)

Plaintiff is not entitled to a public interest fee waiver for its second request concerning the FTC's history granting public interest fee waivers. This request fails the "public interest"

prong because while the first and second elements of the test are satisfied, the third and fourth elements are not.

Plaintiff satisfies the first element since the information it requests involves the *operations or activities of government*.  The requested information involves the operations and activities of government because it concerns the FTC's decision-making process on fee waivers.  *See Judicial Watch, Inc.*, 365 F.3d at 1126-27 (finding information on FOIA requests regarding presidential pardons involved the operations and activities of government).

Plaintiff satisfies the second element since the information is *likely to contribute* to public understanding.  The requested information is likely to contribute to public understanding by enlightening the public on how to obtain public interest fee waivers for FOIA requests.  *See Rossotti*, 326 F.3d at 1313-14; *Prison Legal News*, 436 F. Supp. 2d at 26.

However, Plaintiff has not met the third element and shown that the requested information will contribute to understanding of the *public at large*.  Plaintiff and the FTC largely repeat their arguments regarding the first request for this second request. The FTC, however, also adds that Plaintiff did not satisfy this element because Plaintiff's website was not even functional at the time of this second request. Def.'s Mot. Summ. J. at 11; Def.'s Reply at 16. Plaintiff contests this fact. Plaintiff's Statement of Genuine

Issues and Response to Defendant's Statement of Material Facts

("Pl.'s Genuine Issues") 2-3.

The Court finds that Plaintiff did not satisfy this third element for the same reasons that Plaintiff did not satisfy this third element for its first request: COA did not specifically demonstrate its intent and ability to disseminate the requested information to the public. Regardless of whether or not the website was functional, Plaintiff made no attempt to explain how many people likely view its website and thus would likely view the requested information. *See generally* Pl.'s Opp'n. Plaintiff's lack of specificity in this matter means it has not met its burden to indicate its intent and ability to disseminate the information to the public. *See Rossotti*, 326 F.3d at 1314; *Fed. CURE*, 602 F. Supp. 2d at 203; *Judicial Watch Inc.*, 2005 U.S. Dist. LEXIS 14025, at *13-14.

Plaintiff has also not satisfied the fourth element of the test and shown that the information would *significantly* contribute to public understanding. Because the primary beneficiary of the requested information is Plaintiff, the information is not likely to significantly contribute to public understanding. *See Nat'l Treasury Employees Union*, 811 F.2d at 647-49; *Monroe-Bey*, 890 F. Supp. 2d at 98.

Plaintiff argues that it satisfies this element because it will write a report describing how the FTC grants public interest fee

waivers, which will benefit the public.  Opp'n at 7–8, 31–32.  The FTC argues that Plaintiff has not shown that the report would benefit the public.  Def.'s Mot. Summ. J. at 12; *see* Def.'s Reply at 14.

The Court agrees with the FTC.  In *National Treasury Employees Union*, the court denied the plaintiff a fee waiver for a FOIA request concerning information on employees who had previously received awards and bonuses.  811 F.2d at 648.  Even though the union's large size meant the information could improve labor relations and working conditions for a large part of the population, the court still denied the union a fee waiver because the union primarily made the request to benefit its "unique and limited" private interests. *Id.*

Similar to the union's requested information, Plaintiff's proposed report on the FTC's fee waiver grants may well benefit the public, but the record does not indicate that Plaintiff primarily made this second request in order to write that report to benefit the public.  First, Plaintiff made this second request in the same letter it was appealing the FTC's denial of a public interest fee waiver for its first request.  Compl. Ex. 5.  In fact, Plaintiff made this second request contingent on the possibility that "upon review of [its] appeal, the FTC continues to deny Cause of Action's claims for a fee waiver under the public interest exception." *Id*. Because Plaintiff only wanted to pursue this second request if the

FTC found it was not entitled to a public interest fee waiver on the first request, it is clear that Plaintiff's primary interest in the second request was its desire to better prepare itself for an appeal of its fee waiver denial of its first request. Second, Plaintiff never expressly indicated in this second request that it had plans to use the information to inform the public about the FTC's history of granting fee waivers. *Id*. This fact has made the Court skeptical of Plaintiff's intentions of benefiting the public with this second request, because Plaintiff had made clear its intentions of informing the public when it made its first FOIA request. *See* Compl. Ex. 1. Because plaintiff has not demonstrated that the public was the primary beneficiary of the requested information, Plaintiff does not satisfy the fourth element of the "public interest" prong of the test.[4]

---

[4] Having concluded that COA's second FOIA request fails the public interest prong of the test, it is unnecessary to determine whether it meets the commercial interest prong. See 5 U.S.C. § 552(a)(4)(A)(iii) (fee waiver granted only if the requested information contributes to "public understanding of the operations or activities of government *and* is not primarily in the commercial interest of the requestor." (emphasis added). Even if the Court were to consider the commercial interest prong of the test, however, it would likely find COA's second request fails that as well, because of its nexus with the lawsuit plaintiff filed against the agency. *See Rozet v. HUD*, 59 F. Supp. 2d 55, 57 (D.D.C. 1999)(requested information designed to further plaintiff's commercial position in a civil suit with agency advances plaintiff's commercial interest, rather than the public interest); *see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 816 (2d Cir. 1994) (request for records relating to processing of plaintiff's own FOIA requests were in preparation for litigation with the agency over those requests, and therefore not in the public interest).

Accordingly, the FTC properly denied Plaintiff's request for a public interest fee waiver for its second request.

### c.    Request #3 (FOIA-2012-00687)

The fee waiver issue for Plaintiff's third request is moot because no fees were associated with the request.  As set forth above, plaintiff was designated as an "Other (General Public)" requestor, and thus under 16 C.F.R. § 4.8(b)(3) was entitled to 100 disclosable responsive pages free of charge.  Def.'s Mot. Summ. J. at 12; Def.'s Reply at 17;.  Plaintiff's third request yielded ninety-five responsive pages.  The agency determined that sixteen pages were exempt and provided plaintiff with seventy nine pages free of charge.  Plaintiff did not have to pay a fee for the request and the FTC did not have to consider whether Plaintiff was entitled to a fee waiver. *Id.*

Plaintiff claims, however, that the FTC should have still made a determination on its fee waiver request regardless of how many documents were ultimately withheld. Pl.'s Opp'n at 33.  Plaintiff contends that had it been entitled to receive more than 100 pages under a revised search, there would have been a fee associated with its third request.  *Id.*  Plaintiff bolsters its argument by pointing to an instance where the FTC granted a fee waiver to another group even when the FTC only located thirty-five pages, six of which were exempt.  *Id.*  The FTC responds by claiming that fee waiver

determinations are made on a case-by-case basis. Def.'s Reply at 18.

The Court agrees with the FTC on this issue. Agencies are discouraged from making fee waiver determinations based on the possibility that some records may ultimately be determined to be exempt from disclosure. *Schoenman v. FBI*, 604 F. Supp. 2d 174, 190 (D.D.C. 2009) (quoting *Judicial Watch, Inc.*, 2005 U.S. Dist. LEXIS 14025, at *12); *see also Carney*, 19 F.3d at 815 (finding that agencies should only deny fee waiver requests for "patently exempt documents"). Courts do not want agencies to deny fee waivers based on the possibility of the documents' exempt status only because it might permit an agency to "require a requestor who is otherwise entitled to a fee waiver to make payment even before the agency's claimed exemption has been tested in court" or because it might discourage requestors from testing the boundaries of FOIA's exemptions. *Carney*, 19 F.3d at 815; *see Schoenman*, 604 F. Supp. 2d at 190; *Judicial Watch, Inc.*, 2005 U.S. Dist. LEXIS 14025, at *12. In *Schoenman*, the court found it unacceptable for the agency to deny the requestor a fee waiver after finding that portions of the requested documents were exempted. 604 F. Supp. 2d at 190. In *Judicial Watch, Inc.*, the agency was not permitted to deny the requestor a fee waiver after finding most of the information was exempt and the non-exempt information did not satisfy the public interest fee waiver test. 2005 U.S. Dist. LEXIS 14025, at *12.

However, unlike *Schoenman* and *Judicial Watch, Inc.*, the FTC declared Plaintiff's fee waiver issue moot not based on the number of pages that were exempt, but based on the fact that it only found less than 100 responsive pages for Plaintiff's third request. As a result, the FTC could not have been discouraging Plaintiff from testing the bounds of FOIA's exemptions because it did not base Plaintiff's fee waiver determination on the number of pages that were exempted. Furthermore, the concern that the FTC made a fee waiver determination before the exemptions were tested in court is not relevant here. Even if this Court found that the FTC improperly withheld the sixteen pages from Plaintiff, Plaintiff would still only receive ninety-five pages and Plaintiff would still not be required to pay a fee under 16 C.F.R. § 4.8(b)(3).

Moreover, Plaintiff's arguments that it might be required to pay a fee if a revised search produces more than 100 pages is unpersuasive. It is inappropriate to speculate about the existence of other responsive documents for Plaintiff's request that may have entitled Plaintiff to more than 100 pages. *See SafeCard Services*, 926 F.2d at 1200 (finding that agency affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents"). The FTC's affidavits indicate it performed a thorough and diligent search regarding Plaintiff's request, Gray Decl. at ¶¶ 24-26, and COA does not challenge the adequacy of the

search in this litigation.  Thus, the fee waiver issue for
Plaintiff's third request is moot.

**2. "Representative of the News Media" Fee Waiver**

Fees associated with FOIA requests are "limited to reasonable
standard charges for document duplication when records are not
sought for commercial use and the request is made by . . . a
representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II)
(2012).  A representative of the news media is a person or entity
that (1) gathers information of potential interest to a segment of
the public; (2) uses its editorial skills to turn the raw materials
into a distinct work; and (3) distributes that work to an audience.
*Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C.
Cir. 1989).  The Court's review of the agency's denial is *de novo*.
*See Id.*, 880 F.2d at 1383; *Elec. Privacy Info. Ctr. v. U.S. Dep't of
Def.*, 241 F. Supp. 2d 5, 9 (D.D.C. 2003) (hereinafter "*EPIC*");
*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d at
59.  The Court's review is also limited to the record before the
agency. *Judicial Watch*, *Inc.*, 185 F. Supp. 2d at 59.  The requestor
has the burden of proving it is a representative of the news media.
*Id.* at 60; *Hall v. CIA*, Case 04-814, 2005 U.S. Dist. LEXIS 6638, *21
(D.D.C. Apr. 13, 2005).

For the reasons set forth in Section III.A.1.C above,
plaintiff's request for a fee waiver for its third request is moot
because no fees were associated with the request.  Accordingly, the

Court must determine whether Plaintiff sufficiently demonstrated its qualification for a "representative of the news media" fee waiver for its first and second FOIA requests.[5]

The Court concludes Plaintiff has not sufficiently demonstrated it is entitled to "representative of the news media" for either request. Plaintiff satisfies the first element of the definition but not the second or third elements.

Plaintiff satisfies the first element because it gathers information of potential interest to a segment of the public. Plaintiff's first request regarding the FTC's Guides satisfies this element because the request involves gathering information on social media authors and blogger's First Amendment rights. *See EPIC*, 241 F. Supp. 2d at 11 (finding information on privacy issues and civil liberties was of potential interest to the public). Plaintiff's second request regarding fee waiver denials also satisfies this element because it involves gathering information on government decisions that can affect parts of the population. *See Nat'l Sec.*

---

[5] The FTC claims COA did not exhaust its administrative remedies for its first request because it failed to raise the news media issue in its initial appeal of FTC's denial of a fee waiver. See Compl. Ex. 5, Compl. Ex. 6 n.1. Plaintiff responds that it "continuously asserted that it was a news media requestor" throughout its voluminous correspondence with the FTC, which often addressed multiple FOIA requests and asserted multiple theories for fee waivers within the same letters. Opp'n at 5, *citing* Compl. Ex. 3 at 2, Ex. 8 at 5, Ex. 12 at 7. Assuming without deciding that plaintiff exhausted its administrative remedies, plaintiff's request is denied on the merits for the reasons set forth below.

*Archive*, 880 F.2d at 1386 (finding information on U.S. foreign affairs was of potential interest to the public).

Plaintiff, however, does not satisfy the second element by showing it uses its editorial skills to turn raw material into a distinct work. To satisfy the second element, Plaintiff must demonstrate that it would use information from a range of sources to independently produce a unique product. *Nat'l Sec. Archive*, 880 F.2d at 1386; *EPIC*, 241 F. Supp. 2d at 11-12. In *National Security Archive*, the requestor satisfied this element because it was gathering raw material from a wide variety of sources in addition to the FOIA requests at issue in order to create "document sets" on specific topics, as it previously had done in a published book. 880 F.2d at 1386. The requestor in *EPIC* identified seven books it previously published that contained information derived from various sources beyond FOIA requests to substantiate its intent and ability to do so again. 241 F. Supp. 2d at 11-12.

COA has not shown it is like the plaintiffs in those cases. The only information it identified as "published" is unspecified information it posts on its website, social media sites such as Facebook and Twitter, and through an email newsletter it began publishing to subscribers beginning in September 2011, *after* it made its first FOIA request and just one month before it filed its second request. Pl.'s Opp'n at 36-37, see also Compl. ¶¶ 12,25, Ex. 8 at

4, Ex. 12 at 7.[6]  Also unlike those plaintiffs, COA did not indicate

any distinct work it planned to create based on the requested

information or that it would use any information beyond than

obtained in the FOIA requests to create any unique product.  See

Compl. Ex. 12.  Accordingly, it did not satisfy the second element

of the news media requestor definition.

Even if it had satisfied the second element, however, COA would

not qualify for the news media fee waiver because it did not satisfy

the third element: that it has an intent and ability to disseminate

its work.  To satisfy this element, Plaintiff must demonstrate that

it has the intent and ability to disseminate the requested

information to the public rather than merely make it available;

Plaintiff must also demonstrate that its operational activities are

especially organized around doing so. *See EPIC*, 241 F. Supp. 2d. at

12-13; *Nat'l Sec. Archive*, 880 F.2d at 1386-87; *Judicial Watch,*

*Inc.*, 185 F. Supp. 2d at 59-60; *Judicial Watch I*, 122 F. Supp. 2d at

21.

Plaintiff points to its periodical newsletter, website, social

media sites, and relationships with media contacts as proof of its

intent and ability to disseminate the information.  Pl.'s Opp'n at

36-38.  The FTC argues that Plaintiff did not demonstrate it could

[6] Plaintiff provided slightly more information regarding its
publishing practices in its April 4, 2012 letter to the FTC, but
this letter was solely in reference to its third FOIA request.  It
was not before the Agency in its determination regarding plaintiff's
first two requests.  See Compl. Ex. 15.

30

disseminate its work to an audience because it characterized its actions as more like a middleman for dissemination to the media than a representative of the media itself. Def.'s Mot. Summ. J. at 11-12; Def.'s Reply at 11. Furthermore, the FTC argues that Plaintiff's website was not functioning at the time of the second request and that its list of media contacts is not part of the administrative record. *Id*.

Upon review of the administrative record, the Court finds Plaintiff did not satisfy the third element of the news media requestor definition. First, Plaintiff has not specifically demonstrated its intent and ability to disseminate the requested information to the public rather than merely make it available. In *EPIC*, the requestor satisfied this element by indicating that its newsletter reached 15,000 readers and had been published every two weeks for the past eight years. 241 F. Supp. 2d at 12-13. By contrast, COA's newsletter did not even exist until after it made its first FOIA request, and had only been published for a month when it filed its second request. Although COA claimed it would disseminate the requested information through its periodical newsletter, website, social media sites, and media contacts, Plaintiff has not estimated how many people view its website or social media, nor has it indicated whether its media contacts would write about the requested information. Moreover, even assuming COA's media contacts would publish articles or reports involving the

information, this is still not enough; COA "cannot simply borrow [its media contacts'] credentials for purposes of proving its own entitlement to a "representative of the news media" fee limitation." *Hall v. CIA*, 2005 U.S. Dist. LEXIS 6638, *22 n.11. Thus, even assuming Plaintiff's website was functioning and its list of media contacts was in the administrative record, Plaintiff's website and media contacts would not have been sufficient to satisfy this element.

Second, the administrative record does not show that Plaintiff's activities are organized especially around dissemination. For a "representative of the news media" fee waiver request, the requestor should be identified by its activities rather than by its description. *EPIC*, 241 F. Supp. 2d at 11-12; *Nat'l Sec. Archive*, 880 F.2d at 1385-86. In *EPIC,* the plaintiff was organized around dissemination since it was an educational institution engaged in publishing books and contributing to other publications. 241 F. Supp. 2d at 1112; *see also Nat'l Sec. Archive*, 880 F.2d at 1386 (finding the plaintiff archivist engaged in scholarly research was a representative of the news media). In the *Judicial Watch, Inc.* cases, on the other hand, the requestor did not satisfy this element because while it had shown it would provide the information to reporters, post it on its website, blast press releases, and convey the information in its radio and television appearances, the requestor ultimately admitted that its activities mainly involved

performing nonprofit government watchdog functions. *Judicial Watch,*

*Inc.*, 185 F. Supp. 2d at 59-60; *Judicial Watch I*, 122 F. Supp. 2d at

21. As a result, the Courts found the requestor was more like a

middleman for dissemination to the public rather than a

representative of the news media. *Id.*

Similar to the *Judicial Watch, Inc.* cases, Plaintiff has

admitted to this Court that it is an "independent 501(c)(3) public

interest organization" and that its activities involve "us[ing]

public advocacy and legal reform strategies to ensure greater

transparency in government, protect taxpayer interests, and promote

economic freedom." Compl. ¶ 5; Ex. 8. Unlike the research

organizations in *EPIC* and *National Security Archive,* Plaintiff

performs its activities to aid in government accountability and is

thus more like a middleman for dissemination to the media. Because

Plaintiff did not demonstrate that it distributes work to an

audience and is especially organized around doing so, it cannot be

defined as a representative of the news media.

**B. EXEMPTION 5**

The final issue before this Court is whether the FTC properly

withheld documents responsive to Plaintiff's second and third FOIA

requests under Exemption 5.[7] Because plaintiff did not exhaust its

administrative remedies for this issue with respect to its second

_____

[7] The FTC released in full 100 pages of responsive records in
response to COA's first request, claiming no exemptions from
withholding. Gray Decl. ¶¶ 14-15.

request, the Court cannot address whether documents for Plaintiff's second request were properly withheld. With regard to Plaintiff's third request, the Court finds that the FTC properly withheld the memoranda under Exemption 5's deliberative process privilege and Exemption 5's attorney work-product privilege but improperly withheld the screenshots under both privileges.

### 1. FOIA Request #2 (FOIA-2012-00227)

The FTC argues that this Court cannot review the issue of FTC's withholding of documents for Plaintiff's second request since Plaintiff did not exhaust its administrative remedies. Def.'s Mot. Summ. J. at 16; Def.'s Reply at 19-20. Specifically, the FTC contends that plaintiff did not appeal the agency's withholding of documents pursuant to Exemption 5 that were responsive to plaintiff's second FOIA request. Def.'s Reply at 20. However, Plaintiff claims that its April 4, 2012 letter in which it asked for a *Vaughn* index demonstrates its challenge to the FTC's withholding of documents for its second request. Pl.'s Opp'n at 38 n.19. Plaintiff argues that any full appeal of the FTC's withholding for its second request would have been premature because the FTC had not yet provided a *Vaughn* index to satisfy its burden of proving the documents' eligibility for the claimed exemptions. *Id.*

The Court agrees with the FTC. Requestors must exhaust all administrative remedies before seeking judicial review of agency actions. *Oglesby*, 920 F.2d at 62-63; *Dettmann v. U.S. Dep't of*

*Justice*, 802 F.2d 1472, 1476-77 (D.C. Cir. 1986).  A requestor who does not make any objections to the agency's actions regarding a FOIA request has not exhausted its administrative remedies with respect to that agency action.  *Dettmann,* 802 F.2d at 1477 (holding that it is possible to exhaust administrative remedies with respect to one aspect of a FOIA request but not another).  Exhaustion is usually required so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision before a court interferes.  *Hidalgo v. FBI,* 344 F.3d 1256, 1258 (D.C. Cir. 2003).

In this case, Plaintiff did not specifically object to the FTC's withholding of documents responsive to its second request.  Plaintiff points to its April 4, 2012 letter as proof of its appeal but that letter only referred to Plaintiff's third FOIA request.  *See* Compl. Exs. 15-16.  Because Plaintiff did not specifically appeal the withholding with regard to its second request, the FTC did not have a chance to address the exemptions relating to the second request before Plaintiff filed this suit.  *See* Compl. Exs. 15, 16.  Consequently, the purposes of exhaustion were not satisfied in this case as the FTC has not been able to consider Plaintiff's issue before this Court interferes.

Furthermore, Plaintiff's claims that an administrative appeal would have been premature because no *Vaughn* index had yet been provided are unavailing.  Plaintiff was not entitled to a *Vaughn*

index during the FTC's administrative appeals process.  *See Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 187 n.5 (D.C. Cir. 2013).  As a result, Plaintiff's appeal could not have been contingent on the provision of a *Vaughn* index.

**2. FOIA Request #3 (FOIA-2012-00687)**

The FTC also argues that Plaintiff did not exhaust its administrative remedies regarding the agency's withholding of documents responsive to its third request. Def.'s Reply at 17. Unlike Plaintiff's second request, however, the Court finds Plaintiff did exhaust its administrative remedies for this request by objecting to the FTC's conclusory withholding of documents for its third FOIA request in its April 4, 2012 letter of appeal. *See* Compl. Ex. 15 at 1-4.  The purposes of the exhaustion requirement have been met since the FTC had an opportunity to address the matter when it responded to Plaintiff's appeal in its May 7, 2012 letter. See Compl. Ex. 16, *see also Hidalgo*, 344 F.3d at 1258.  Thus, the Court can address whether the FTC properly withheld the documents under Exemption 5 for the third request.

The defendant withheld two categories of documents under Exemption 5: (1) two screen shots of COA's website taken in December 2011; and (2) three short memoranda, between four and six pages in length, prepared by paralegals for agency counsel between September and December 2011 regarding COA's FOIA requests.  The agency relies on two privileges to justify withholding under Exemption 5: the

deliberative process privilege and the attorney work product

privileges.  See Compl. Ex. 14.  The privileges will be addressed in

turn.

## a. Deliberative Process Privilege

Exemption 5 allows agencies to withhold "inter-agency or intra-

agency memorandums or letters which would not be available by law to

a party other than an agency in litigation with the agency." 5

U.S.C. § 552(b)(5).  Exemption 5's deliberative process privilege

protects agency documents that are both (1) predecisional and (2)

deliberative. *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C.

Cir. 2006); *Baker & Hoestetler LLP v. U.S. Dep't of Commerce*, 473

F.3d 312, 321 (D.C. Cir. 2006).  To be predecisional, documents must

precede an identifiable agency decision, and the information must

have been used in the decision making process.  *Morley v.* CIA, 508

F.3d 1108, 1127 (D.C. Cir. 2007).  Documents are deliberative if

they reflect the give-and-take of the consultative process.  *Coastal*

*States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C.

Cir. 1980).  The analysis is a functional approach and courts must

determine whether disclosure of the document would "stifle honest

and frank communication within the agency." *Id.* at 866. Documents

made by a subordinate for a superior, which contain recommendations

or legal advice based on opinion to aid in making complex decisions,

are considered deliberative.  *Id.* at 868-869; *Brinton v. U.S. Dep't*

*of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).  Even factual material

prepared by staff for a superior can be deliberative when the
documents likely incorporate staff opinions on which facts are
important for the superior to make a decision. *Mapother v. U.S.
Dep't of Justice*, 3 F.3d 1533, 1538 (D.C. Cir. 1993); *Montrose Chem.
Corp. of California v. Train*, 491 F.2d 63, 67-68 (D.C. Cir. 1974).

It does not appear that Plaintiff challenges the FTC's
invocation of the deliberative process privilege in response to
Plaintiff's third request. *See* Opp'n at 43-44. Nevertheless,
because Plaintiff clearly intended to challenge the withholding
under Exemption 5, the Court addresses the issue and concludes that
the FTC properly withheld the memoranda but not the screenshots
under Exemption 5's deliberative process privilege.

The FTC argues that the memoranda were properly withheld under
the deliberative process privilege because they consist of the
subordinate employee's "personal thoughts, opinions and analysis,
and his predecisional recommendations to his supervisor." Def.'s
Mot. Summ. J. at 17; *see* Def.'s Reply at 23. The Court agrees. The
memoranda were specifically written with regards to Plaintiff's FOIA
requests. Stearns Decl. at ¶¶ 33-34. The memoranda are
deliberative because they contain legal advice and recommendations
from a subordinate paralegal to a supervising attorney on how the
FTC should make a complex decision, Plaintiff's qualification for
fee waivers for its FOIA requests. Def.'s Mot. Summ. J. Ex. T;
Stearns Decl. at ¶ 33-34. Even if the memoranda contain facts, the

affidavits demonstrate that these facts involve the subordinate's opinions since the facts "[reflect] the author's judgment and assessment of the relevant data." Def.'s Mot. Summ. J. Ex. T.

To the extent Plaintiff raises a segregability challenge, it is unavailing.  The Court finds that the FTC sufficiently met its duty to detail whether any segregable items could have been disclosed. The Stearns declaration, *see* Stearns Decl. at ¶ 38, and the *Vaughn* index, *see* Def.'s Mot. Summ. J. Ex. T, indicate that no information could be segregated because the information was inextricably intertwined with the subordinate's thoughts and personal opinions regarding the agency's response to COA's FOIA requests. *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (requiring an agency to explain if non-exempt portions are "inextricably intertwined with exempt portions" and thus cannot be disclosed); *Edmonds Inst. v. U.S. Dep't of the Interior*, 383 F. Supp. 2d 105, 109-10 (D.D.C. 2005) (requiring an agency to "explain whether there is any information that can be segregated as non-exempt from the rest of the document").  The Court therefore finds that, as to the three withheld memoranda, any nonexempt portions are so intertwined with exempt portions that no portion can be disclosed.

However, the FTC improperly withheld the screenshots under the deliberative process privilege. "Factual material is not protected under the deliberative process unless it is 'inextricably

intertwined' with the deliberative material." *Judicial Watch, Inc.*
*v. U.S. Dep't of Justice,* 432 F.3d 366, 372 (D.C. Cir. 2005) (citing
*In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997); *Bristol-Myers*
*Co. v. FTC*, 424 F.2d 935, 939 (D.C. Cir. 1970); *Am. Civil Liberties*
*Union v. FBI*, 429 F. Supp. 2d 179, 190 (D.D.C. 2006). The
screenshots are factual material because according to the FTC's
affidavits, the screenshots are "images, derived from accessing
COA's website, that depict the functionality, or the lack thereof,
of COA's website." Suppl. Decl. of Dione Jackson Stearns ¶ 6. Even
if the paralegal took the screenshots in order to help the
supervising attorney make an informed decision on Plaintiff's fee
waiver request, the paralegal did not express any opinions in taking
the screenshots. When he took the screenshots, the paralegal was
simply capturing images of Plaintiff's website at the direction of
his supervising attorney. Def.'s Mot. Summ. J. Ex. T. Thus, there
is also no "deliberative" material upon which the screenshots could
be "inextricably intertwined." As a result, the screenshots cannot
be properly withheld under Exemption 5's deliberative process
privilege.

As a result, the FTC has met its burden to demonstrate that the
memoranda, but not the screenshots, were properly withheld under the
deliberative process privilege.

### b. Attorney Work-Product Privilege

Exemption 5 can be construed as exempting documents that are normally privileged in the civil discovery context, including documents protected by the attorney work-product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1985). The work-product doctrine protects materials "prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." Fed. R. Civ. P. 26(b)(3)(A). The privilege is narrow and is primarily applied to protect the adversarial process by allaying attorneys' fears that their thoughts and opinions could be exposed to their adversaries. *Coastal States Gas Corp.,* 617 F.2d at 864 (citing *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978)). Thus, documents that would not be "routinely" or "normally" available to parties during litigation fall under the attorney work-product privilege of Exemption 5. *Sears, Roebuck & Co.*, 421 U.S. at 148-49.

In assessing whether the proponent has carried its burden to show a document is protected as work-product, the relevant inquiry is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared . . . because of the prospect of litigation." *EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999). Although the agency need not have a specific claim in mind when preparing the documents, there must exist some articulable claim

that is likely to lead to litigation in order to qualify the documents as attorney work-product. *Coastal States Gas Corp.*, 617 F.2d at 865; *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) *abrogated on other grounds by Milner v. Dep't of Navy*, 131 S. Ct. 1259 (2011); *Am. Immigration Council v. Dep't of Homeland Security,* 905 F. Supp. 2d 206, 221 (D.D.C. 2012) (work product encompasses documents prepared for litigation that is "foreseeable," if not necessarily imminent). As another judge on this Court recently observed:

> The Circuit has drawn a line between neutral, objective analyses of agency regulations and more pointed documents that recommend how to proceed further with specific investigations or advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome. Neutral, objective analysis is like an agency manual, fleshing out the meaning of the law, and thus is not prepared in anticipation of litigation. More pointed advice, however, anticipates litigation.

*Am. Immigration Council*, 905 F. Supp. 2d at 221-222 (citations and quotation marks omitted).

The FTC argues that the memoranda were properly withheld under the attorney work-product privilege because they were prepared by the paralegal under the direction of an attorney and in anticipation of litigation specifically with Plaintiff, over Plaintiff's FOIA requests and the agency's responses to those requests. Def.'s Mot. Summ. J. at 16-17; *see* Def.'s Reply at 23-24. Indeed, the final withheld memorandum, dated December 16, 2011, was prepared after COA

had explicitly threatened the agency with litigation.  See Compl.
Ex. 9, Letter from COA to FTC dated Dec. 12, 2011 at 3 ("We question
your purported reliance on *Ogelsby*, but will be more than happy to
take that issue up with the District Court should you persist in
denying our fee waiver.").

Because the FTC's affidavits and *Vaughn* index consistently
demonstrate that the documents were prepared in reasonable
anticipation of litigation with Plaintiff, the FTC has met its
burden to show that the memoranda fall under Exemption 5's attorney
work-product privilege.  As a result, there is no need to perform an
in-camera inspection of the memoranda. *See Elec. Privacy Info.
Center v. U.S. Dep't of Justice*, 584 F. Supp. 2d 65, 83 (D.D.C.
2008) (finding in-camera review appropriate where agency affidavits
in support of a claim of exemption were insufficiently detailed);
*Mehl v. EPA*, 797 F. Supp. 43, 46 (D.D.C. 1992) (deciding to perform
an in-camera review of the documents in question because a publicly
available report describing the documents contradicted the agency's
affidavits describing the same documents).  Moreover, a document
protected by the work product privilege "is fully protected,"
thereby requiring no segregability analysis.  *Judicial Watch, Inc.
v. DOJ*, 432 F.3d at 371.

However, the FTC improperly withheld the screenshots under the
attorney work-product privilege.  It is true that Exemption 5's
attorney work-product privilege protects any part of a document

prepared in anticipation of litigation, including the opinions and legal theories as well as the facts. *Judicial Watch, Inc.*, 432 F.3d at 371; *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). Furthermore, unlike the deliberative process privilege, the attorney work-product privilege does not require segregability of the facts from the opinions. This practice ensures that the attorney's appraisal of factual evidence is protected. *Exxon Corp. v. FTC*, 476 F. Supp. 713, 722-723 (D.D.C. 1979). Nevertheless, when documents are purely factual, Exemption 5's attorney work-product privilege no longer applies. *Mervin v. FTC*, 591 F.2d 821, 826 (D.C. Cir. 1978) ("[T]he government cannot exempt pure statements of fact from disclosure by calling them attorney work-product"); *Exxon Corp.*, 476 F. Supp. at 722-23. Thus, the same reasoning that precluded the screenshots as exempted under the deliberative process privilege precludes them as exempted under the attorney work-product privilege. As purely factual material that contains no opinions or strategic thinking of the paralegal who prepared them, or the attorney for whom they were prepared, the screenshots were improperly withheld under Exemption 5's attorney work-product privilege.

Thus, the FTC properly withheld the memoranda under Exemption 5's attorney work-product privilege but improperly did so for the screenshots.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** with respect to Plaintiff's applications for fee waivers, and is further **GRANTED** with respect to the Defendant's withholding of documents responsive to Plaintiff's second FOIA request, and its withholding of memoranda responsive to Plaintiff's third FOIA request. The motion is **DENIED** with respect to the FTC's decision to withhold screenshots of Plaintiff's website responsive to its third FOIA request. A separate order accompanies this memorandum opinion.

**Signed:**     **Emmet G. Sullivan**
                  **United States District Judge**
                  **August 19, 2013**